**EASTALCO ALUMINUM COMPANY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**F.W. MYERS & CO., INC., a/c Eastalco Aluminum Company, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**INTALCO ALUMINUM CORPORATION, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Court Nos. 83–01–00092 to 83–01–00094, 83–01–00096, 83–01–00098, 84–04–00588, 83–05–00696 to 83–05–00699, 83–06–00792, 85–11–01644, 85–11–01645 and 88–10–00814.**
**Suspension Calendar No. 83–01–00095.**

United States Court of International Trade.

Oct. 26, 1990.

Neville, Peterson & Williams, John M. Peterson, Peter J. Allen, New York City, for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, New York City, Bruce N. Stratvert, Civ. Div., U.S. Dept. of Justice, New York City, for defendant.

## MEMORANDUM AND ORDER

RESTANI, Judge:

These actions, in which issue has not yet been joined, are pending on the Court of International Trade's (CIT) suspension calendar. Defendant moves this court for an order: (a) removing these actions from the suspension calendar, (b) granting defendant leave to file a counterclaim against plaintiff in each action, (c) precluding plaintiff's unilateral dismissal of these actions prior to the filing of such counterclaim and (d) granting such other and further relief as the court deems just and proper under the circumstances.

Alternatively, defendant moves for an order: (a) removing these actions from the suspension calendar, (b) remanding these actions to the United States Customs Service (Customs) for reconsideration of the appropriate classification and rate amount of duties chargeable with respect to the imported merchandise which is the subject of these actions absent further order of the court. Plaintiff opposes these requests on the basis that they are an unwarranted intrusion on its right under Rule 41(a) to dismiss an action prior to the filing of an answer, and on the basis that any counterclaim was compulsory in the test case.

## FACTS

On January 14, 1983, test case plaintiff Eastalco filed several summonses in this court pursuant to 28 U.S.C. § 1581(a) (1982), contesting the classification by Customs of certain carbon refractory bricks used in the manufacture of aluminum. Each summons notified defendant and the court of plaintiff's intention to challenge Customs' denial of particular protests, filed pursuant to 19 U.S.C. § 1514, regarding the classification of these bricks. Customs had classified the blocks under item 517.61 of the former Tariff Schedules of the United States (TSUS) (1981), and had assessed duties accordingly. Plaintiff protested that the bricks were properly entitled to duty-free entry as "other" refractory bricks, under TSUS item 531.27.

On July 22, 1983, plaintiff Eastalco filed Complaints in two of the actions: 83-1-00095 (which encompassed entries of carbon refractory *bottom* bricks) and 83-1-00097 (which encompassed entries of refractory carbon *sidewall and corner* bricks). Defendant filed answers to these complaints on December 6, 1983, which denied plaintiff's demand for refunds, but contained no counterclaims or other demands for monetary relief in favor of the Government.

On January 11, 1984, plaintiff moved, with the consent of defendant, to consolidate Court Nos. 83-1-00095 and 83-1-00097 for purposes of trial; to have the consolidated case designated a test case pursuant to court rule 84; and to suspend ten (10) other summonses, pending disposition of the test case. The court granted this motion, and, on January 26, 1984, deemed the consolidated complaint filed. Defendant filed its answer to the consolidated complaint on March 26, 1984. Other cases were later suspended under the test case.

On January 14, 1985, defendant moved to amend its answer to the consolidated complaint in order to allege, by way of counterclaim, that the imported bricks involved in the consolidated test case were classifiable under TSUS item 517.91, a broad provision covering "other" articles of carbon or graphite. The provision carried a higher rate or duty than Customs' initial classification under TSUS item 517.61. Plaintiff did not

oppose this motion to amend the pleadings. On February 12, 1985, the court granted defendant's motion to add the counterclaim in the test case. Plaintiff filed a reply to defendant's counterclaim on February 15, 1985.

The test case was tried on December 19, 1985, and submitted for decision. On September 23, 1986, the court issued an interlocutory Opinion and Order in the test case. *Eastalco Aluminum Co. v. United States*, 10 CIT 622, 1986 WL 10513 (1986). The court determined that plaintiff had overcome the presumption of correctness attaching to the Government's initial classification of the merchandise as "electrodes" under TSUS item 517.61. The court, however, had insufficient information to determine whether the goods were classifiable as "other" refractory bricks, as claimed by plaintiff, or whether the category claimed by defendant in its counterclaim applied. Accordingly, the case was remanded to Customs for further findings.

Following remand, the Court conducted an additional fact finding in the test case addressed to the issue of whether the imported bricks were "crystalline or substantially crystalline", as is required for classification as refractory brick under TSUS item 531.27.

On October 19, 1989, the court entered its final decision and judgment in the test case. *Eastalco Aluminum Co. v. United States*, 13 CIT ——, 726 F.Supp. 1342 (1989), *aff'd*, 916 F.2d 1568 (Fed.Cir.1990). The court held that the merchandise was not classifiable as refractory brick. Judgment in favor of the Government was entered on the counterclaim for classification under the general provision, TSUS item 517.91, as found by Customs on remand.

Defendant's motion herein was filed prior to resolution of the appeal in this matter.

## DISCUSSION

I. *The Suspension/Test Case Procedure.*

This is a case of first impression regarding this court's unique "test case/suspension" procedure. Defendant fears that because of this court's decision on the counterclaim in the test case, plaintiff will voluntarily dismiss the suspended cases, thereby preventing the government from collecting the full amount of additional duties and interest due on the merchandise involved in the suspended cases.

While the court may look to decisions regarding the Federal Rules of Civil Procedure (Fed.R.Civ.P.) for guidance in interpreting its own rules, *see* CIT Rule 1, such decisions are of limited value in a case such as this due to its relation to a procedure not found in the Fed.R.Civ.P. Under the rules of this court, parties to actions involving similar issues of fact or law may move to "suspend" the action pending the outcome of a designated "test case" involving the aforementioned issues. *See* CIT Rule 84. While this procedure is similar to stay of proceedings under general federal procedure, it has its own history and some differences, notably a case may be suspended after the filing of a summons but before the filing of a complaint.

The special procedure was designed to deal with problems caused by the interplay of two factors. The first factor is the nature of importing, which often involves continuing entry of merchandise during the pendency of an action with regard to identical or similar merchandise. The second factor is the well established principle that the outcome of a classification case is not *res judicata* with respect to merchandise which is not the subject of the actual transactions before the court. *United States v. Stone & Downer Co.*, 274 U.S. 225, 230–237, 47 S.Ct. 616, 616–19, 71 L.Ed. 1013 (1927). If not for the "test case/suspension" procedure or a similar stay procedure, litigation of tariff classification disputes would involve many suits covering similar issues of fact and law and unwieldy consolidations. *See e.g. Old Republic Ins. Co. v. United States*, 9 CIT 190, 191 n. 5, 1985 WL 25759 (1985), *quoting H.H. Elder & Co. v. United States*, 69 Cust.Ct. 344, 345 (1972). A strong *stare decisis* rule together with the suspension procedure has

been an efficient way of resolving these disputes.

The suspension/test case procedure, which, as indicated, includes the right to file a summons without filing a complaint, was devised before the court obtained jurisdiction to render judgments on counterclaims. The court has very brief rules governing circumstances in which counterclaims may be filed and these rules do not address the suspended case issue. The rules also do not distinguish between compulsory and permissive counterclaims. *Compare* CIT Rule 13(a) and (b) *with* Fed. R.Civ.P. 13(a) and (b). Background relating to the court's counterclaim jurisdiction and thus to plaintiff's argument that any counterclaim was compulsory in the test case follows.

II. *The Court's Counterclaim Jurisdiction.*

Prior to 1980, in any action brought to contest the denial of a protest, the United States Customs Court could determine only whether an importer had met a dual burden of proof to (1) overcome the presumption of correctness attaching to the protested Government decision and (2) establish the correctness of its own asserted classification, rate of duty, or appraised value. In cases where a litigant proved the Government's decision erroneous but where the Government proved a classification, rate of duty, or appraisement which would have resulted in a higher duty than was assessed administratively, the court was without power to order the plaintiff to pay the higher duties. H.Rep. No. 96–1235, 96th Cong., 2d Sess. 35 (1980), U.S.Code Cong. & Admin.News 1980, pp. 3729, 3746; *see also J.E. Bernard & Co. v. United States*, 64 Cust.Ct. 525, 527, C.D. 4029 (1970) (citing cases), *appeal dismissed*, 58 CCPA 165 (1970).

In 1980, Congress amended the law to eliminate plaintiff's dual burden of proof, thereby requiring the court to find the correct classification if plaintiff proved the government's classification erroneous. *See* 28 U.S.C. § 2643(b) (1988); *Jarvis Clark Co. v. United States*, 733 F.2d 873, 877–78; *House of Adler, Inc. v. United States*, 2 CIT 274, 277–78, 1981 WL 2510 (1981) (citing H.Rep. No. 96–1235, 96th Cong., 2d Sess. 60–61 (1980), U.S.Code Cong. & Admin.News 1980, pp. 3771–3773).[1] In the same legislative package Congress also expanded the jurisdiction of the court. *See Customs Courts Act of 1980*, P.L. 96–417, 94 Stat. 1727 (the "Act"). Section 201 of the Act gave the court jurisdiction to entertain certain counterclaims as follows:

> In any civil action in the Court of International Trade, the Court shall have exclusive jurisdiction to render judgment upon any counterclaim, cross-claim or third-party action of any party, if (1) such claim or action involves the imported merchandise that is the subject matter of such civil action, or (2) such claim or action is to recover upon a bond or customs duties relating to such merchandise.

28 U.S.C. § 1583.

This grant of jurisdiction sparked much controversy during Congressional consideration of the Act. Disagreement existed over whether the court should be granted jurisdiction over any counterclaims against a private plaintiff and if so, whether such jurisdiction would extend to the subject matter of (1) any civil action by such party pending before the court, (2) any civil action involving the same type of merchandise as the claim under litigation, or (3) only the merchandise in the transaction immediately before the court.

S. 1654, a bill introduced on August 2, 1979, stated:

> The Court of International Trade shall have jurisdiction to render judgment upon any setoff, demand, or counterclaim asserted by the United States which arises out of the same import transaction pending before the Court or a claim to recover upon a bond relating

---

**1.** Thus, whether a counterclaim is filed or not, if the government's original classification is disproved, the inquiry continues.

to the importation of merchandise or to recover customs duties.

A Senate Report accompanying this bill noted that "The circumstances in which a counterclaim may be asserted are quite limited. A counterclaim may not be asserted unless in effect it arises out of the same import transaction pending before the court." S.Rep. No. 96–466, 96th Cong., 1st Sess. 13 (1980). A bill introduced into the House of Representatives, H.R. 6394, on January 31, 1980, provided for broader counterclaim jurisdiction as follows:

> The Court of International Trade shall have exclusive jurisdiction to render judgment upon (1) any counterclaim asserted by the United States which arises out of an import transaction that is the subject matter of a civil action pending before the court, or (2) any counterclaim of the United States to recover upon a bond or customs duties relating to such transaction.

The controversy is reflected in transcripts of hearings held by the House Judiciary Committee on February 13 and 28, 1980. Importers' groups stressed that they would be subject to counterclaims unrelated to the subject matter involved in the active litigation. Government representatives, on the other hand, stressed the unsatisfactory nature of the traditional system, whereby a higher tariff classification could be assessed on subsequent entries but the litigated and suspended entries would escape proper duties. The House Report which accompanied the Act summarizes the controversy:

> Under the provision proposed in H.R. 6394, it would be possible for the court to rule that a plaintiff should pay additional duties to the United States on the basis of the counterclaim asserted and proved by the United States. That provision would allow the counterclaim to be asserted not only with regard to the particular matter which gave rise to the civil action being litigated but also as to all other civil actions pending in the Court of International Trade involving import transactions by the same plaintiff.

Several witnesses strongly recommended the deletion of this provision from the legislation. They claimed that the counterclaim provision would permit the Government to exact additional duties from importers months after the importer has moved his goods into the stream of commerce at a price that accounts for the duties assessed by the Customs Service. These witnesses testified that the inclusion of the counterclaim provision fails to recognize the unique Customs Court practice known as the suspension process.

The Association of the Customs Bar summed up the position of a large segment of the private bar when it testified that the inclusion of the counterclaim provision "can only have a chilling effect on the commencement of litigation in the Court of International Trade." The private bar's concern rested fundamentally on the fact that the counterclaim provision would expose private litigants to uncertainty as to an importer's ultimate liability, particularly when the Government files a counterclaim challenging a valuation that is not the subject of the complaint filed by the plaintiff. Other witnesses contended that the Government has ample opportunity prior to and after liquidation to reassess the initial valuation or classification and should not be accorded still another opportunity to collect a higher duty on goods long released into the stream of commerce, particularly after the Government's rights under section 501 of the Tariff Act of 1930 have lapsed.

The American Importers Association (AIA) opposed the inclusion of the counterclaim provision, as it appeared in H.R. 6394. The Association did not believe that "permitting the Government to raise counterclaims on suspended cases, many of which will never come to trial ... could promote judicial efficiency." In light of that concern, AIA originally recommended that the provision be limited to "*the* import transaction that is the subject matter of *the* civil action before the Court." Subsequently, in response to a question from Congressman John

Seiberling, AIA agreed that limiting the counterclaim to "the imported merchandise" would be a reasonable limitation.

Assistant Secretary of the Treasury Richard J. Davis pointed out that the counterclaim provision would facilitate judicial economy and would not have an undue chilling effect. He indicated that there is nothing extraordinary about litigants and their lawyers having to balance the likely benefits of proposed litigation against the possibility of counterclaims. "On the one hand, by allowing some counterclaims involving the same importer which we do propose be done, you're in the position of consolidating litigation, getting disputes between the same parties resolved more quickly. The fact that somebody has to consider whether they are subject to claims when they bring suit is the kind of judgment lawyers are called upon to make in a whole host of occasions when they have to advise clients whether it's prudent or not prudent to come forward and bring litigation."

It is the Administration's position that the Government should not be precluded from asserting a claim that would allow the court to make the proper determination and accordingly would enable the Government to collect the full amount of duties.

After extensive discussion the Subcommittee adopted an amendment limiting the Government's counterclaim to "the imported merchandise." *This amendment strikes a compromise between the need of the Government to recover the proper amount of import duties and the exposure of the importer to additional liability.* During the full Committee's consideration of H.R. 7540, an amendment to delete the provision from the bill was defeated.[2]

H.R.Rep. No. 1235, 96th Cong., 2d Sess. 35–37, *reprinted in* 1980 U.S.Code Cong. & Ad.News 3729, 3746–48. (Footnotes deleted) (Emphasis in last paragraph added, other emphasis in original). *See also Customs Courts Act of 1980: Hearings on H.R. 6394 Before the Subcomm. on Monopolies and Commercial Law of the House Comm. on the Judiciary,* 96 Cong., 2d Sess. 131–32 (1980).

■ Apparently, the government believes that the "compromise" that was reached lies between the Scylla of the August 2, 1979 version of S. 1654, which would have limited the court's counterclaim jurisdiction to *the* import transaction that is the subject of *the* civil action before the court, and the Charybdis of the January 31, 1980 version of the same bill, which would have allowed the Government to assert counterclaims regarding the classification or appraisement of any merchandise or transaction by the same importer pending before the court. That is, defendant believes that by limiting jurisdiction to counterclaims which involve the imported merchandise, Congress intended to extend counterclaim jurisdiction to cases involving the *same type of merchandise* as the litigated or "test" case. *See* Brief in Support of Defendant's Motion For Removal at p. 11.

In *United States v. Lun May Co., Inc.,* 11 CIT 18, 652 F.Supp. 721 (1987) (dismissing a counterclaim by a private party extending to all merchandise covered by the bond at issue), the court found the plain words of the statute to indicate the transaction specific counterclaim jurisdiction of the type first contemplated by the Senate. An argument can be made that the particular issue involved here was not before the court in *Lun May,* but the court need not reach the issue of the applicability of *Lun May* to the case at hand. The court is convinced that even if counterclaim jurisdiction reaching to merchandise similar or identical to that involved in the test case exists, such counterclaims are not compulsory and need not be asserted in the test case. Some background on the scope of compulsory and permissive counterclaim is necessary to an understanding of the court's ruling in this regard.

According to Fed.R.Civ.P. 13(a) and (b):

---

**2.** The language of H.R. 7540 is codified as 28 U.S.C. § 1583.

**(a) Compulsory Counterclaims.** A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon the claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is stating any counterclaim under this Rule 13.

**(b) Permissive Counterclaims.** A pleading may state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim.

The compulsory counterclaim rule, by which claims arising out of the same transaction or occurrence as the opposing party's claim are waived if not pleaded in the action, promotes judicial economy by requiring litigants to resolve their grievances arising out of a single set of circumstances in one action. The framers of Rule 13 wished to strike a balance between the need for judicial economy and the right of a claimant to choose the time and the forum in which to assert the claim.

The purpose of Rule 13(a) is to enable the court to settle all related claims in one action and avoid the wastefulness of multiplicity of litigation on claims arising from a single transaction or occurrence. The rule goes beyond "the barring effect of the doctrines of former adjudication." Wright, Miller & Kane, *Federal Practice and Procedure:* Civil 2d § 1409 (1990). A counterclaim is compulsory if it bears a logical relation to the opposing party's claim:

"Transaction" is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness to their connection as upon their logical relationship.... Essential facts alleged by appellant enter into and constitute in part the cause of action set forth in the counterclaim. That they are not precisely identical, or that the counterclaim embraces additional allegations ... does not matter.

*Moore v. New York Cotton Exchange,* 270 U.S. 593, 610, 46 S.Ct. 367, 371, 70 L.Ed. 750 (1926).

This court, however, has not adopted Fed.R.Civ.P. 13(a) and (b). To act as if it had would severely prejudice defendants. Furthermore, there is no indication that Congress wished to upset the court's suspension procedures,[3] to provide any general rule on compulsory versus non-compulsory counterclaims in this court, or to change the law regarding the *res judicata* effects of a classification decision. Congress either decided to allow counterclaims involving the import transactions involved in a particular case or slightly broader counterclaims relating to the same type of merchandise, if litigation regarding such merchandise also is pending. Congress' focus was not on this fairly technical distinction, but on the distinction between no counterclaims and counterclaims involving wholly unrelated merchandise. It clearly rejected these two extremes.

Because the court has not adopted a compulsory counterclaim rule going beyond "the barring effects of the doctrines of former adjudication," claims related to merchandise not covered by the entries immediately before the court should not be considered "inextricably intertwined" with resolution of the case before the court. Of course, under a broad reading of *United States v. Lun May Co., Inc., supra,* counterclaims involving non-subject entries could not be made in the test case.

---

**3.** Broad use of "permissive" counterclaims of the type discussed here would cause some disruption of the suspension scheme.

Having disposed of plaintiff's alternative claim that defendant had waived its counterclaims by not asserting them in the test case, the court turns to the issue of under what circumstance plaintiff loses its right to voluntarily abandon cases under CIT Rule 41(a).

### Part III. *Right to Voluntarily Dismiss Under Rule 41(a).*

■ CIT Rule 41(a) provides in part as follows:

(1) BY PLAINTIFF–BY STIPULATION. Subject to the provisions of Rule 23(e), of Rule 66, and of any statute of the United States, an action may be dismissed by the plaintiff without order of court (A) by filing a notice of dismissal which shall be substantially in the form set forth in Form 7 of the Appendix of Forms at any time before service by the adverse party of an answer or motion for summary judgment, whichever occurs first, or (B) by filing a stipulation of dismissal, which shall be substantially in the form set forth in Form 8 of the Appendix of Forms, signed by all parties who have appeared in the action.

This rule mirrors Fed.R.Civ.P. 41(a) and on its face gives plaintiff a right to dismiss a case without court action or agreement of other parties "at any time" before an answer or motion for summary judgment has been served.

This apparently absolute right has been limited in at least one court of appeals case, *Harvey Aluminum, Inc. v. American Cyanamid Co.*, 203 F.2d 105 (2d Cir.) *cert. denied*, 345 U.S. 964, 73 S.Ct. 949, 97 L.Ed. 1383 (1953). In that case the court reversed a denial of a motion to vacate a voluntary dismissal. The dismissal was filed after an extended hearing on the merits of a case involving the specific performance of a sales contract. The hearing took place in the context of adjudication of a motion for preliminary injunction against any other sale by defendant. The court

noted that Rule 41(a) was to apply to an early stage of a proceeding. But as indicated in 5 J. Moore, *Moore's Federal Practice* para. 41.02[3], 41–27, 41–28 (2d ed. 1988), most courts have declined to follow *Harvey*. Some have rejected it, *see e.g. Winterland Concessions Co. v. Smith*, 706 F.2d 793, 795–96 (7th Cir.1983); *Carter v. United States*, 547 F.2d 258, 259 (5th Cir. 1977),[4] while others, including the Second Circuit itself, have limited it to its facts. *See Thorp v. Scarne*, 599 F.2d 1169, 1174–76 (2d Cir.1979); *Littman v. Bache & Co.* 252 F.2d 479, 481 (2d Cir.1958).

Thus, it appears that plaintiff's right to dismiss under Rule 41(a) should not be curtailed until an answer, or the best equivalent of an answer under the test case/suspension procedure, is served.

### IV. *Procedures Available.*

■ At this point there is no court rule providing for any "equivalent to an answer" in the test case/suspension procedure, and there is no way to file an answer in a case suspended before a complaint is filed.[5]

As the court understands it, at the time defendant obtained permission to amend its answer to include a counterclaim in the test case, suspension had already occurred in most of the cases at issue. The easy solution of not consenting to suspension until all pleadings were served, while technically available to defendant, probably would not have occurred to defendant as an option to consider until it knew it had a counterclaim. At the point it knew it had a counterclaim to assert in the suspended cases, all of which involve merchandise identical to one or the other test case, defendant *could* have taken some action. Unfortunately, what action it *should* have taken is not clear.

Under CIT Rule 7 an answer cannot be filed until a complaint is filed. The Cus-

---

**4.** The *Carter* court did not cite *Harvey*.

**5.** Presumably if a case were merely "stayed" after complaint a motion to lift stay could be

filed along with a proposed answer. Whether this would be equivalent to service of an answer under Rule 41(a) need not be decided here.

toms Court found that a summons in this court

> is a document which is in all respects at least the equal of a summons and complaint in any other court. In my opinion it was intended to serve the role of a complaint with the one characteristic of *permitting the action to remain quiescent.*

*The Rubberset Company v. United States,* 68 Cust.Ct. 370, 372, 342 F.Supp. 749, 751–52 (1972) (emphasis added). But *Rubberset* predates this court's counterclaim jurisdiction and the court doubts that even the *Rubberset* court conceived of an answer to a summons. Furthermore, filing an answer is not the same as remaining "quiescent."

Defendant may have had the option of moving earlier to end suspension so that pleadings could be filed, but it is unclear whether it could do so if it intended to resuspend the case. CIT Rule 84(g) states:

> A suspended action may be removed from the Suspension Calendar only upon a motion for removal. A motion for removal may be granted *solely for the purpose of moving the action toward final disposition.* An order granting a motion for removal shall specify the terms, conditions and period of time within which the action shall be finally disposed. [Emphasis added]

While this "pre-counterclaim jurisdiction" rule may not have contemplated the lifting of suspension for purposes of ultimate resuspension, it may have to be read broadly to accommodate the procedural problems raised by counterclaims.[6] Use of Rule 84 in such a manner, however, is likely to cause useless expenditure of judicial time. Motions to lift suspension for resuspension purposes seem nonproductive even if they are permissible.[7] The court concludes therefore, that there was no procedure clearly available to defendant at the time it filed its counterclaim in the test case which allowed for any relevant action in the suspended cases.

## V.  *Procedures for this Case.*

■ The question that arises now is whether defendant should be permitted to utilize some procedure now devised or recognized by the court to preclude voluntary dismissal under rule 41(a) now that the test case has been litigated fully. At oral argument plaintiff asserted that it has relied on the absolute rights given to it under Rule 41(a) in determining its litigation strategy. That is, it assumed that should it lose the test case, its potential liability for additional duties would be limited to the test case. Given the lack of clarity of the rules as a whole, as applied to this area, and the less than clear language of the counterclaim statute and its history, the court doubts that plaintiff was justified in assuming that defendant's consent to suspension would protect plaintiff from counterclaim liability. Plaintiff could give no reason why defendant might have a sound strategy in waiting to clarify the status of its potential counterclaims and defendant has asserted by affidavit that it had no such strategy. Accepting *arguendo* plaintiff's description of its own strategy, plaintiff should not have based its entire strategy on an assumption that the court would not relieve defendant of the effects of a simple mistake.[8]

Defendant's view is that until the court took action on the instant motion, or plaintiff agreed *not* to voluntarily dismiss its actions pending resolution of these motions in exchange for consent to an extension of time relating thereto, plaintiff was free to dismiss its actions. The court need not decide exactly when plaintiff's rights were curtailed. The court agrees with defen-

---

**6.** To do otherwise probably would defeat the purpose of the test case/suspension procedure for an entire class of cases, that is, those involving counterclaims.

**7.** Lifting of suspension for remand to Customs has much the same problem and seems completely useless because the court has decided the relevant issues already.

**8.** The court does not rule the defendant actually erred in its interpretation of the rules, only that it made an error in judgment in not requesting clarification at an early date; plaintiff made the same error.

dant, however, that plaintiff has attempted to preserve all options despite the full litigation of the test case, and despite the pitfalls presented by the lack of a clear procedure. Plaintiff wanted to preserve the possibility of a monetary recovery without risking any loss even on identical merchandise. Litigation involves some risks and, at this point, plaintiff no longer retains all options.

Defendant has given fair notice through these motions, if it did not do so by its counterclaim in the test case, that it intends to assert counterclaims in the cases involving the motions before the court. Rule 41(a) provides a right to dismiss freely only through the time of serving of an answer, even without a counterclaim. Because defendant was limited to filing motions for removal from suspension, and not counterclaims, in the suspended cases, plaintiff likely kept its options for a little while longer than usual.

As indicated, the court finds that the rules are unclear in this area. The parties should have requested clarification of this matter for purposes of this litigation at an early date, and neither party was entitled to rely on any particular interpretation of the rules. As the parties are equally at fault in not raising this matter earlier or were otherwise mistaken, and because both parties would be equally prejudiced by a ruling in favor of the other, the court will rule in the interest of justice, that is, it will provide relief so that there may be the opportunity for any duties owed under the law to be collected in the suspended cases involving identical merchandise. This appears to be a fair result well within the contemplation of the test case/suspension rules. Therefore, in each of the cases in which the motions discussed herein have been filed plaintiff is prohibited from asserting its ordinary rights under Rule 41(a) to dismiss without leave of court. The court further holds that in all other actions currently suspended under the test case herein plaintiff shall be prohibited from voluntarily dismissing such actions under Rule 41(a) as soon as defendant files a "notice of potential counterclaim" in the particular case.[9]

Unless and until the rules of the court are modified to clarify the procedures to be followed should defendant desire to assert a counterclaim in a suspended case, defendant would be wise to decline to consent to suspension until pleadings are filed in cases potentially involving counterclaims, or if suspension is already in effect to give early notice by motion or otherwise of its intentions regarding counterclaims. Likewise plaintiffs would be wise not to simply rely on a previous consent to suspension as a waiver of counterclaim in a suspended case. Early notification of intentions will allow parties to better assess their risks and the court to resolve these issues at an early stage. It is also in keeping with the spirit of Rule 41(a) and the suspension/test case procedure which are intended to foster efficient disposition of actions.

SO ORDERED.

---

9. Defendant has three days to accomplish this. After passage of such time without the filing of such notice plaintiff may exercise its Rule 41(a) rights in such cases.