**EASTALCO ALUMINUM COMPANY, F.W. Myers & Co., Inc., and Intalco Aluminum Corporation, Plaintiff–Appellants,**

**v.**

**The UNITED STATES, Defendant–Appellee.**

**No. 91–1234.**

United States Court of Appeals, Federal Circuit.

June 3, 1993.

---

John M. Peterson, Neville, Peterson & Williams, of New York City, argued for plaintiff-appellants. With him on the brief was Peter J. Allen.

Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Dept. of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and Bruce N. Stratvert, Atty.

Joseph S. Kaplan, Ross & Hardies, Chairman, Trial and Appellate Practice Committee, of New York City, was on the brief for amicus curiae, Customs and Intern. Trade Bar Ass'n.

Before ARCHER, LOURIE and ALARCON,[1] Circuit Judges.

ARCHER, Circuit Judge.

Eastalco Aluminum Co., F.W. Myers & Co., and Intalco Aluminum Co. (collectively Eastalco) appeal the order of the United States Court of International Trade (trial court) enjoining them from voluntarily dismissing certain cases placed on that court's "Suspension Calendar." *See Eastalco Aluminum Co. v. United States*, 750 F.Supp. 1135 (Ct.Int'l Trade 1990). Because the injunction is in direct conflict with Rule 41(a)(1),[2] which gives a plaintiff the right to dismiss a case voluntarily prior to service of answer or motion for summary judgment, we vacate the injunction and remand.

1. Honorable Arthur L. Alarcon, United States Court of Appeals for the Ninth Circuit, sitting by designation.

2. Unless otherwise indicated, references are to the Rules of the United States Court of International Trade, as amended January 1, 1991.

3. Usually, an action is commenced by concurrent filing of a summons and complaint, (*see* 28 U.S.C. § 2632(a) (1982), Rule 3(a)), but actions to contest a classification decision of Customs can be commenced by the filing of a summons

I.

The controversy in this case arises from the trial court's test case/suspension procedures. *See* Rules 84 and 85. On January 14, 1983, Eastalco filed several summonses[3] in the trial court to commence actions contesting the classification by the United States Customs Service (Customs) of certain imported carbon refractory bricks used in the manufacture of aluminum. Customs had classified these bricks as electrodes under Item 517.61 of the Tariff Schedules of the United States (TSUS)[4] (1981), assessed duties accordingly and denied Eastalco's protest that the bricks were properly entitled to duty-free entry as "other" refractory bricks under TSUS Item 531.27.

On July 22, 1983, Eastalco filed complaints in two of the actions (Case No. 83-1-00095, relating to carbon refractory bottom bricks, and Case No. 83-1-0097, relating to carbon refractory sidewall and corner bricks). With the consent of the United States, Eastalco then moved to consolidate cases no. 83-1-00095 and no. 83-1-00097 for the purposes of trial; to have the consolidated case designated a test case pursuant to Rule 84; and to suspend the other cases, for which summonses but no complaints had been filed, pending disposition of the test case. The trial court granted this motion. *See* Rule 84(a).

After filing its answer, the government moved to amend the answer in order to allege, by way of counterclaim, that the imported bricks were classifiable under TSUS Item 517.91, a broad provision covering "other" articles of carbon or graphite. That provision carries a higher rate of duty than Customs' initial classification under TSUS Item 517.61.

alone. (*See* 28 U.S.C. § 2632(b) (1982), Rule 3(a)(1).) In a case where a complaint has not been filed, defendant cannot answer or assert a counterclaim.

4. The Tariff Schedules of the United States were superseded by the Harmonized Tariff Schedules of the United States, effective January 1, 1989, pursuant to the Omnibus Trade and Competitiveness Act of 1988, Pub.L. No. 100-418, 102 Stat. 1107 (Aug. 23, 1988).

On October 19, 1989, the trial court entered its final decision and judgment in the test case. *Eastalco Aluminum Co. v. United States,* 726 F.Supp. 1342 (Ct.Int'l Trade 1989). The trial court rejected Eastalco's contention that the merchandise was duty-free and determined that the merchandise should have been classified under TSUS Item 517.91, thus sustaining the government's counterclaim. *Id.* at 1343. This court affirmed on October 18, 1990. *Eastalco Aluminum Co. v. United States,* 916 F.2d 1568 (Fed.Cir.1990).

While the appeal to this court was pending, the government filed a motion to remove the suspended cases from the Suspension Calendar, to grant the government leave to file a counterclaim against Eastalco in each case, and to preclude Eastalco from unilaterally dismissing the suspended cases prior to the filing of the counterclaim. During the suspension, complaints were not filed in the suspended cases, and as a result the government had not answered or counterclaimed in those cases. To support its motion the government cited 28 U.S.C. § 1583 and Rules 1, 13(a) and 84(g).[5] The trial court took no action on the government's motion during the pendency of the appeal, but after the appeal was decided, the motion was granted. Eastalco appeals from the order enjoining it from voluntarily dismissing the suspended cases.

## II.

A. Rule 41(a)(1) states as follows: Subject to the provisions of Rule 23(e), of Rule 66, and of any statute of the United States, an action may be dismissed by the plaintiff without order of the court (A) by filing a notice of dismissal which shall be substantially in the form set forth in Form 7 of the Appendix of Forms at any time before service by the adverse party of an answer or motion for summary judgment, whichever occurs first....

The trial court noted that "[t]his rule mirrors Fed.R.Civ.P. 41(a) and on its face gives [Eastalco] a right to dismiss a case without court action or agreement of other parties 'at any time' before an answer or motion for summary judgment has been served." 750 F.Supp. at 1142.[6] The trial court stated, however, that where the test case/suspension procedures have been utilized its rules are "unclear in this area." *Id.* at 1144. In particular, the trial court thought a conflict existed between the test case/suspension procedures and Rule 41(a)(1) because the government was prevented from filing an answer or motion for summary judgment in the suspended cases. The trial court "in the interest of justice" granted the government's motion. *Id.*

B. The trial court erred in seeing a lack of clarity in Rule 41(a)(1). Circuit courts have consistently held that Fed.R.Civ.P. 41(a)(1) *unambiguously* gives a plaintiff the right to dismiss an action before the defendant serves an answer or motion for summary judgment. *See, e.g., Hamilton v. Shearson–Lehman American Express, Inc.,* 813 F.2d 1532, 1535 (9th Cir.1987); *Winterland Concessions Co. v. Smith,* 706 F.2d 793, 795 (7th Cir.1983); *Thorp v. Scarne,* 599 F.2d 1169, 1175–76 (2d Cir.1979); *D.C. Elecs., Inc. v. Nartron Corp.,* 511 F.2d 294, 298 (6th Cir.1975); *Pilot Freight Carriers, Inc. v. International Bhd. of Teamsters,* 506 F.2d 914, 915 (5th Cir.1975); *American Cyanamid Co. v. McGhee,* 317 F.2d 295, 297 (5th Cir.1963). The drafters of Rule 41(a)(1)(i) did not phrase "the rule in vague terms or, as in Rules 41(a)(1)(ii) and 41(a)(2), by calling for judicial involvement or the exercise of judi-

---

**5.** The government also relied on "the Court's inherent power," and, finally, "the general equity powers of the Court" in seeking the injunction against dismissal. Rule 1 relates to construction of the rules so "to secure the just, speedy and inexpensive determination of every action" and Rule 13(a) relates to the filing of counterclaims. The trial court did not consider these other grounds invoked by the government for relief. We find it inappropriate to consider them in view of our decision that the government could have protected its counterclaim position in the suspended cases by filing its Rule 84(g) motion at an earlier date.

**6.** Because Rule 41(a)(1) is substantively identical to Fed.R.Civ.P. 41(a)(1), we may look to cases construing the federal rule for guidance. *See Sumitomo Metal Indus., Ltd. v. Babcock & Wilcox Co.,* 669 F.2d 703, 705 n. 3 (CCPA 1982).

cial discretion." *D.C. Elecs.*, 511 F.2d at 297. Rather, as the Seventh Circuit explained:

> Rule 41(a)(1) as it was drafted simplifies the court's task by telling it whether a suit has reached the point of no return. If the defendant has served either an answer or a summary judgment motion it has; if the defendant has served neither, it has not.

*Winterland Concessions*, 706 F.2d at 795. Moreover, voluntary dismissal under Rule 41(a)(1)(i) has been referred to as "a matter of right running to plaintiff [that] may not be extinguished or circumscribed by adversary or court." *American Cyanamid*, 317 F.2d at 297.

■ C. Although the government argues that it was prevented from filing counterclaims in the suspended cases, we are not convinced that the test case/suspension procedure creates a conflict with Rule 41(a)(1). It is apparent from the opinion of trial court that there are procedures available under which the government can seek to assert a counterclaim in a suspended case.

The trial court recognized that the government can refuse to consent to the suspension procedures until all pleadings are served. The court said:

> Unless and until the rules of the court are modified to clarify the procedures to be followed should defendant desire to assert a counterclaim in a suspended case, defendant would be wise to decline to consent to suspension until pleadings are filed....

750 F.Supp. at 1144. If suspension has already occurred, Rule 84(g) provides:

> A suspended action may be removed from the Suspension Calendar only upon a motion for removal. A motion for removal may be granted solely for the purpose of moving the action toward final disposition. An order granting a motion for removal shall specify the terms, conditions and period of time within which the action shall finally be disposed.

The opinion below recognized that this procedure could have "end[ed] the suspension so that pleadings could be filed." 750 F.Supp. at 1143.

In this case, the government tried to remove the suspended cases from the Suspension Calendar by filing a motion under Rule 84(g). It delayed in making this motion until after the trial court issued its decision on the counterclaim issue in the test case, although it could have been made at the time the counterclaims were first asserted. Had the government followed the latter course, the provisions of Rule 84(g) could have been met, i.e., "for the purpose of moving the action toward final disposition." At that time, the trial court in granting the motion could have ordered that pleadings be filed and that the cases either be resuspended or consolidated with the test case for trial. *See Apple Computer Inc. v. United States*, No. 91–63, 1991 WL 144219, 1991 Ct.Intl.Trade LEXIS 216 (Ct.Int'l Trade July 25, 1991). Such an order would have put Eastalco to an immediate election—(1) either dismiss the cases under Rule 41(a)(1) or (2) proceed with the filing of complaints, after which the government's counterclaim would be asserted, and run the risk of an adverse decision on the counterclaim issue.

The government's delay in seeking a Rule 84(g) removal from the Suspension Calendar put the trial court in somewhat of a dilemma. The trial court could not strictly comply with the language of Rule 84(g) when the test case had already been decided and was on appeal. It would have had to resuspend the cases pending the outcome of the appeal or hold a second trial on the same issue.

The trial court thus delayed ruling on the government's motion until after this court affirmed the trial court's judgment for the government in the test case. Since the government had won, it appears that the trial court felt compelled to fashion a remedy to prevent Eastalco from voluntarily dismissing the suspended cases and thereby denying the government the full fruits of its counterclaim victory. Because Rule 41(a)(1) draws a bright line and is unambiguous and because the problem of applying the test case/suspension procedure in a manner compatible with Rule 41(a)(1) arose because of the government's own delay, we are convinced that the trial court's attempt to alter Eastalco's right to voluntary dismissal was error.

Accordingly the trial court's order enjoining Eastalco from dismissing the suspended cases is vacated and the case is remanded.

### COSTS

Each party shall bear its own costs.

VACATED and REMANDED.