In the
United States Court of Appeals
For the Seventh Circuit

No. 01-2522

Santiago V. Marques and Carey Portman,

Plaintiffs-Appellants,

v.

Federal Reserve Bank of Chicago
and Unknown Shareholders of the
Federal Reserve Bank of Chicago,

Defendants-Appellees,

and

Federal Deposit Insurance Corporation,

Defendant.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 C 5646--Harry D. Leinenweber, Judge.

Argued March 6, 2002--Decided April 16, 2002

Before Posner, Evans, and Williams, Circuit
Judges.

Posner, Circuit Judge.  The plaintiffs
brought suit against the Federal Reserve
Bank of Chicago and the Federal Deposit
Insurance Corporation, plus the
shareholders of the federal reserve bank
(the other national banks in the bank's
federal reserve district, 12 U.S.C.
sec.sec. 222, 282; Lewis v. United
States, 680 F.2d 1239, 1241 (9th Cir.
1982)), which are individually liable for
the bank's debts "to the extent of the
amount of their subscriptions to [the
bank's] stock at the par value thereof in
addition to the amount subscribed." 12
U.S.C. sec. 502. The plaintiffs claim to
be the agents for the owners of $25
billion in bearer bonds that the bank had
issued back in 1934 in exchange for 1665
metric tons of gold. They want the bank
ordered to redeem the bonds for face
value plus simple interest at 4 percent
since 1934 (although the bonds matured in
1965); the total amount of money they are
seeking is thus close to $100 billion.

The suit is preposterous. There is no record of any such bond issue, and as the national debt of the United States was only $28 billion in 1934, as a year later the entire stock of gold owned by the United States had a value of only $9 billion, and as no securities issue by a U.S. government entity exceeded $100 million before 1940, the claim that in 1934 a federal reserve bank issued bonds that virtually doubled the national debt and added $25 billion in gold to the government's gold holdings can only cause one to laugh. What is more (not that more is needed), although the price at which the government bought gold was fixed at $35 an ounce effective at the beginning of that year, the plaintiffs are claiming that the federal reserve bank bought gold from their predecessors at a price of $467.02 an ounce. The plaintiffs further undermine their case by arguing that there is an international conspiracy to deny the validity of these bonds, a conspiracy pursuant to which the plaintiffs' documents expert, who certified the genuineness of the bonds (in an unsworn and evasive report), has been repeatedly arrested and then released without charges being filed.

The bank's lawyer told us without being contradicted that the Department of Justice has declined to prosecute thepersons involved in the fraud because no one could possibly be deceived by such obvious nonsense. We are puzzled by this suggestion. The Treasury has established a Website warning the public against the class of frauds (called "Morgenthaus," after Henry Morgenthau, Jr., the Secretary of the Treasury in 1934) of which the bond issue alleged in this suit is one (the others also involve supposed $25 billion bond issues). See http://www.publicdebt.treas.gov/cc/ccphony3.htm. There is no ceiling on gullibility. Mr. Portman, the plaintiff who argued the appeal pro se, is one of the deceived--if he is not one of the deceivers, another and perhaps more plausible possibility, Portman having re cently submitted a demand to the Federal Reserve Bank of  Cleveland that it pay him $125 billion to redeem a similar set of fictitious 1934-vintage "Federal Reserve Bonds." We are sending this opinion to the Justice Department for whatever further consideration the

Department may wish to give the fraud.

But though the suit is absurd, the appeal, from the denial of the plaintiffs' Rule 60(b) motion to vacate the judgment that the district court entered in response to the bank's motion for summary judgment, is not. The plaintiffs attempted to dismiss their suit voluntarily under Fed. R. Civ. P. 41(a)(1). Had they succeeded in their attempt, the dismissal would have been without prejudice, and so they could reinstate the suit without facing the bar of res judicata. They can't do that if the judgment granting the bank's motion for summary judgment--a judgment on the merits and therefore with prejudice--stands.

The reason they give for having wanted to dismiss their suit is, naturally, preposterous--that they were in serious negotiations in Spain with the U.S. Government and hoped that the government would acknowledge the legitimacy of their claim so that they could sell the bonds to Russia. But one doesn't need a good reason, or even a sane or any reason, to dismiss a suit voluntarily. The right is absolute, as Rule 41(a)(1) and the cases interpreting it make clear, Commercial Space Mgmt. Co. v. Boeing Co., 193 F.3d 1074, 1077 (9th Cir. 1999); Marex Titanic, Inc. v. The Wrecked & Abandoned Vessel, 2 F.3d 544, 546 (4th Cir. 1993); Eastalco Aluminum Co. v. United States, 995 F.2d 201, 204 (Fed. Cir. 1993); Matthews v. Gaither, 902 F.2d 877, 880 (11th Cir. 1990) (per curiam), until, as the rule states, the defendant serves an answer or a motion for summary judgment. The plaintiffs filed their notice of voluntary dismissal, and the bank served a motion to dismiss the suit under Rule 12(b)(6), on the same day. A motion under Rule 12(b)(6) becomes a motion for summary judgment when the defendant attaches materials outside the complaint, as the bank did, and the court "actually considers" some or all of those materials. Berthold Types Ltd. v. Adobe Systems Inc., 242 F.3d 772, 775-76 (7th Cir. 2001); see also State ex rel. Nixon v. Coeur D'Alene Tribe, 164 F.3d 1102, 1107 (8th Cir. 1999); Finley Lines Joint Protective Bd. Unit 200 v. Norfolk Southern Corp., 109 F.3d 993, 997 (4th Cir. 1997); Aamot v. Kassel, 1 F.3d 441, 444 (6th Cir. 1993) ("conversion [from a

Rule 12(b)(6) motion to a summary judgment motion] takes place at the discretion of the court, and at the time the court affirmatively decides not to exclude the extraneous matters"); Garita Hotel Limited Partnership v. Ponce Federal Bank, F.S.B., 958 F.2d 15, 18 (1st Cir. 1992); 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure sec. 2363 (2d ed. 1995). But the judge did not convert the bank's motion to a motion for summary judgment until later.

And anyway we do not know which document, the plaintiffs' notice of voluntary dismissal or the defendant's motion to dismiss, was filed first. The plaintiffs argue that the bank acknowledged in the district court that the notice of voluntary dismissal was filed before the motion for summary judgment was served, but the only record of this acknowledgment is a transcript that the parties neglected to make a part of the appellate record. However, the district judge, rather than make a finding on which document came first, appears to have believed that as long as they were on the same day, it didn't matter which came first. (It is unquestioned that the plaintiffs did succeed in dismissing the FDIC as a defendant under Rule 41(a)(1), and it is not a party to this appeal.) We cannot find an appellate case on who has the burden of proving the sequence of the filings, but Keal v. Monarch Life Ins. Co., 126 F.R.D. 567 (D. Kan. 1989), places the burden on the defendant, sensibly, as it seems to us, since it is the defendant that is asserting the right to prevent the plaintiff from dismissing the suit.

Both because the district judge did not convert the motion to dismiss to a motion for summary judgment before the plaintiffs filed their Rule 41(a)(1) notice and because the defendant failed to show that its motion was served before the plaintiffs' notice, were the appeal from the judgment in favor of the bank it would be clear that we would have to vacate the judgment and remand the case to the district court with directions to permit dismissal under that rule. But we must consider the bearing of the fact that the appeal is not from the judgment, but rather from the denial of a Rule

60(b) motion to vacate the judgment. A legal error by the district court is not one of the specified grounds for such a motion. In fact it is a forbidden ground, Russell v. Delco Remy Division, 51 F.3d 746, 749 (7th Cir. 1995), because if permitted it would enable a losing party to appeal outside the time limits for appeals without excuse, since the existence of the error would be apparent from the district court's judgment and thus could be corrected on appeal within the time allowed for taking an appeal. Bell v. Eastman Kodak Co., 214 F.3d 798, 801 (7th Cir. 2000); Neuberg v. Michael Reese Hospital Foundation, 123 F.3d 951, 955 (7th Cir. 1997); Bank of California, N.A. v. Arthur Andersen & Co., 709 F.2d 1174, 1176-77 (7th Cir. 1983); Hess v. Cockrell, 281 F.3d 212, 216 (5th Cir. 2002); Plotkin v. Pacific Telephone & Telegraph Co., 688 F.2d 1291, 1293 (9th Cir. 1982).

However, the fourth subsection of Rule 60(b) authorizes a void judgment to be vacated. As an original matter, we might doubt whether an error that results in denying a plaintiff his right of voluntary dismissal is so fundamental or grave that it should be treated as void, implying that the judgment could be vacated many years after it had been entered even though the error that had made it invalid when entered had not been called to the judge's attention in a timely fashion. Rule 60(b)(4) is primarily intended for cases where the suit in which the judgment sought to be vacated was entered was outside the jurisdiction of the district court, as in Pacurar v. Hernly, 611 F.2d 179 (7th Cir. 1979); see also United States v. Zima, 766 F.2d 1153, 1159 (7th Cir. 1985), which this suit was not.

There is, however, considerable and unchallenged case authority (including decisions by this court) that a judgment on the merits that is entered after the plaintiff has filed a proper Rule 41(a)(1) notice of dismissal is indeed void. E.g., Beck v. Caterpillar Inc., 50 F.3d 405, 407 (7th Cir. 1995); Bryan v. Smith, 174 F.2d 212, 214-15 (7th Cir. 1949); Duke Energy Trading & Marketing, L.L.C. v. Davis, 267 F.3d 1042, 1049 (9th Cir. 2001); American Soccer Co. v. Score First Enterprises, 187 F.3d 1108, 1112 (9th Cir. 1999); Bonneville Associates,

Limited Partnership v. Barram, 165 F.3d 1360, 1364 (Fed. Cir. 1999); Meinecke v. H & R Block, 66 F.3d 77, 82 (5th Cir. 1995) (per curiam); Safeguard Business Systems, Inc. v. Hoeffel, 907 F.2d 861, 864 (8th Cir. 1990); Foss v. Federal Intermediate Credit Bank, 808 F.2d 657, 660 (8th Cir. 1986); Williams v. Ezell, 531 F.2d 1261, 1264 (5th Cir. 1976). The cases further make clear that although not every "void" judgment is subject to collateral attack, only those where the voidness is unarguable, In re Edwards, 962 F.2d 641, 644 (7th Cir. 1992), the refusal to vacate under Rule 60(b)(4) an unarguably void judgment is an abuse of discretion. Robinson Engineering Co., Ltd. Pension Plan & Trust v. George, 223 F.3d 445, 448 (7th Cir. 2000); Blaney v. West, 209 F.3d 1027, 1031 (7th Cir. 2000); United States v. Indoor Cultivation Equipment From High Tech Indoor Garden Supply, 55 F.3d 1311, 1317 (7th Cir. 1995); see generally Hertz Corp. v. Alamo Rent-A-Car, Inc., 16 F.3d 1126, 1130 (11th Cir. 1994); Williams v. Brooks, 996 F.2d 728, 730 (5th Cir. 1993) (per curiam); Jalapeno Property Management, LLC v. Dukas, 265 F.3d 506, 515-16 (6th Cir. 2001) (concurring opinion).

We are therefore compelled to reverse the judgment and direct the dismissal of the suit, without prejudice, under Rule 41(a)(1). Should the plaintiffs attempt to bring a new suit similar to the one they are dismissing, namely a fraudulent and possibly a criminal suit, they will be subject to appropriate sanctions.

Reversed.