**MAREX TITANIC, INC., a Tennessee Corporation, Plaintiff–Appellant,**

**Titanic Ventures, Plaintiff–Appellee,**

v.

**THE WRECKED AND ABANDONED VESSEL, its engines, tackle, apparel, appurtenances, cargo, etc., located within one (1) nautical mile of a point located at 41 43 32 north latitude and 49 56 49 west longitude, believed to be the RMS Titanic, in rem, Defendant.**

No. 92–2429.

United States Court of Appeals, Fourth Circuit.

Argued May 5, 1993.

Decided Aug. 24, 1993.

George A. Somerville, Mays & Valentine, Richmond, VA, argued (Alan D. Wingfield, Mays & Valentine, on the brief), for plaintiff-appellant.

F. Bradford Stillman, McGuire, Woods, Battle & Boothe, Norfolk, VA, argued (Mark S. Davis, McGuire, Woods, Battle & Boothe, on the brief), for plaintiff-appellee.

Before HALL, Circuit Judge, SPROUSE, Senior Circuit Judge, and MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation.

## OPINION

K.K. HALL, Circuit Judge:

Marex Titanic, Inc. ["Marex"], appeals the district court's judgment awarding Titanic Ventures exclusive salvage rights to the Titanic. Because we conclude that the district court had no authority to vacate Marex's notice of voluntary dismissal, we reverse.

I.

On April 15, 1912, the RMS Titanic sank in the North Atlantic Ocean approximately 400 miles off the Newfoundland coast. In 1985, a joint French/American expedition discovered the ship's remains at a depth of approximately 12,000 feet. In 1987, Titanic Ventures (a private American corporation) and The Insti-

tute of France for the Research and Exploration of the Sea ["IFREMER"] (a French governmental organization) conducted a joint salvage operation that recovered 1,800 artifacts from the wreck site. Although additional scientific and photographic dives were conducted, at the time this action came before the district court, Titanic Ventures and IFREMER were the only salvors to have worked on the wreck.

On August 7, 1992, Marex—which had never conducted any salvage operations on the ship—filed this action seeking to be named the sole and exclusive owner of any objects recovered from the Titanic or, alternatively, that it be granted a salvage award. In order to establish the court's jurisdiction, Marex's Ralph White deposited with the court two objects (a piece of metal and a prescription bottle) taken from the wreck.[1] Marex represented to the court that all competing salvage claims had been abandoned.

Based on Marex's representations, on August 12, 1992, the district court issued a warrant of arrest, which Marex was required to publish within 10 days. *See* Supp. Admiralty Rules C(3) & C(4). Notice of the arrest was published on September 23, 1992, 32 days late, and one day after the Marex ship had begun sailing toward the Titanic.

On September 23, 1992, Titanic Ventures' lawyers entered a special appearance seeking to vacate the warrant of arrest. Titanic Ventures argued that Marex had obtained the warrant through factual misrepresentations and that the court should dismiss the case in deference to the French Government's prior exercise of jurisdiction. On September 28, 1992, Titanic Ventures moved for a preliminary injunction to preclude Marex from salvaging the ship.

On September 29, 1992, the district court began hearings on the matter. After several of Titanic Ventures' witnesses had testified, the court issued a temporary restraining order barring Marex from salvaging the wreck until further order. On September 30, the hearing continued, and additional witnesses were heard.

As the facts unfolded, the district court made no secret of its feeling that Marex had misled the court in the initial hearing held on August 12, 1992. Marex realized the way the wind was blowing, and, on October 1, 1992, (after three days of hearings) filed a "Notice of Voluntary Dismissal" pursuant to Fed.R.Civ.P. 41(a)(1)(i). Although Marex came within the Rule's terms—Titanic Ventures had not yet served Marex with an answer or a motion for summary judgment—the district court relied on *Harvey Aluminum, Inc. v. American Cyanamid Co.*, 203 F.2d 105 (2d Cir.) (Rule 41(a)(1)(i) dismissal may be denied if parties have argued the merits and substantial evidence has been introduced), *cert. denied*, 345 U.S. 964, 73 S.Ct. 949, 97 L.Ed. 1383 (1953), to "vacate" Marex's notice of dismissal, stating, "it just hasn't gone well for you so now you want to dismiss the case."

On October 2, 1992, Titanic Ventures sought to intervene in Marex's action and filed an "intervening complaint," asking that it be declared the Titanic's exclusive salvor. The district court allowed the intervention and ruled in Titanic Venture's favor by vacating Marex's earlier warrant, which the court found had been obtained through false testimony; granting Titanic Ventures the exclusive right to salvage the wreck; and permanently enjoining Marex "from taking any action towards salvaging ... the vessel."

On October 16, 1992, Marex filed a motion for reconsideration. Following the district court's denial of this motion, *Marex Titanic v. Wrecked and Abandoned Vessel, RMS Titanic*, 805 F.Supp. 375 (E.D.Va.1992) (Order), Marex filed this appeal.

## II.

■ Although the parties have argued numerous issues in this appeal, we shall confine our discussion to whether the district court violated Fed.R.Civ.P. 41(a)(1)(i) when it vacated Marex's notice of voluntary dismissal. Our interpretation of Rule 41's scope is a question of law subject to *de novo* review. *Fields v. Attorney General of Md.*, 956 F.2d

---

**1.** According to Titanic Ventures, White smuggled these objects from the ship while working as a

member of a prior filming expedition.

1290, 1294 (4th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 243, 121 L.Ed.2d 176 (1992).

■ " 'We give the Federal Rules of Civil Procedure their plain meaning.' *Pavelic & LeFlore v. Marvel Entertainment Group,* 493 U.S. [120, 123], 110 S.Ct. 456, 458 [107 L.Ed.2d 438] (1989). As with a statute, our inquiry is complete if we find the text of the Rule to be clear and unambiguous." *Business Guides v. Chromatic Communications Ent.,* 498 U.S. 533, 540–41, 111 S.Ct. 922, 928, 112 L.Ed.2d 1140 (1991). Accordingly, we turn to the Rule itself:

**Rule 41. Dismissal of Actions**

**(a) Voluntary Dismissal; Effect Thereof.**

**(1) By Plaintiff; by stipulation.**

[Subject to several inapplicable exceptions] an action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs, . . . . Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, . . . .

**(2) By Order of Court.**

Except as provided in Paragraph (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. . . . Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.

As the Rule's text makes plain, the universe of plaintiff-initiated, voluntary dismissals is broken into two categories. If the plaintiff files a notice of dismissal before the adverse party serves it with "an answer or a motion for summary judgment", the dismissal is available as a matter of unconditional

right, *see Matthews v. Gaither,* 902 F.2d 877, 880 (11th Cir.1990); *see also Kenrose Mfg. Co. v. Fred Whitaker Co.,* 512 F.2d 890, 895 (4th Cir.1972), and is self-executing, i.e., it is effective at the moment the notice is filed with the clerk and no judicial approval is required. *See* Fed.R.Civ.P. 41 ("an action may be dismissed by the plaintiff *without order of the court*" (emphasis supplied)); *see also* cases collected at 5 James Wm. Moore, et al., *Moore's Federal Practice* ¶ 41.02[2], at 41–17 nn. 6, 7 (2d ed. 1992) [hereinafter *Moore's* ], and 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2363, at 159 n. 43 (1971) [hereinafter Wright & Miller]; *American Cyanamid Co. v. McGhee,* 317 F.2d 295, 297 (5th Cir.1963).[2]

If the plaintiff fails to act before the Rule's "point of no return", *Winterland Concessions Co. v. Smith,* 706 F.2d 793, 795 (7th Cir. 1983), the penalty is that dismissal must be sought under Rule 41(a)(2). For the plaintiff seeking to dismiss without prejudice, this route is far less preferable, because the granting of the motion is within the court's discretion rather than as a matter of right. Fed.R.Civ.P. 41(a)(2) (dismissal is granted only upon "order of the court and upon such terms and conditions as the court deems proper."); *Zagano v. Fordham Univ.,* 900 F.2d 12, 14 (2d Cir.), *cert. denied,* 498 U.S. 899, 111 S.Ct. 255, 112 L.Ed.2d 213 (1990); *Moore's,* at 41–48.

Despite Rule 41(a)(1)(i)'s plain language, *see D.C. Elecs., Inc. v. Nartron Corp.,* 511 F.2d 294, 298 (6th Cir.1975) (Rule 41(a)(1) is clear and unambiguous on its face); *Pedrina v. Chun,* 987 F.2d 608, 610 (9th Cir.1993) (Rule 41(a)(1) is unequivocal), Titanic Ventures seeks to protect its favorable result by arguing that we should endorse the district court's reliance on the Second Circuit's heavily criticized[3] *Harvey Aluminum* exception

---

**2.** In *American Cyanamid,* 317 F.2d at 297, the court stated:

Rule 41(a)(1) is the shortest and surest route to abort a complaint when it is applicable. So long as plaintiff has not been served with his adversary's answer or motion for summary judgment he need do no more than file a *notice* of dismissal with the Clerk. That document itself closes the file. There is nothing the defendant can do to fan the ashes of that action

into life and the court has no role to play. This is a matter of right running to the plaintiff and may not be extinguished or circumscribed by adversary or court. There is not even a perfunctory order of the court closing the file. Its alpha and omega was the doing of the plaintiff alone.

**3.** *See Universidad Cent. del Caribe, Inc. v. Liaison Comm. on Medical Educ.,* 760 F.2d 14, 18–19 (1st Cir.1985) (*Harvey* has been severely limited);

to Rule 41(a).[4] Admittedly, we cited *Harvey Aluminum* with approval in *Armstrong v. Frostie Co.*, 453 F.2d 914, 916 (4th Cir.1971).[5] However, this citation does not control our decision today. *Armstrong* merely relied on *Harvey Aluminum* for the principle that Rule 41 was designed to permit an early disengagement of the parties—a unexceptional proposition with which any court or commentator would agree. With the issue squarely before us, we reject the *Harvey Aluminum* exception to the plain meaning of Rule 41(a)(1)(i)'s text.

Admittedly, one can question the wisdom of allowing a party, through adroit lawyering, to dismiss a case in order to avoid an unfavorable decision on the merits after the court has considered the evidence. It is especially tempting to force the plaintiff to take its medicine in a case like this, where the plaintiff's behavior has been so dissembling, if not downright fraudulent.[6]

However, " 'Our task is to apply the text, not to improve upon it.' " *Business Guides*, 498 U.S. at 549, 111 S.Ct. at 932 (*quoting Pavelic & LeFlore*, 493 U.S. at 126, 110 S.Ct. at 460). When Marex filed its notice of dismissal, Titanic Ventures had not filed an answer or a motion for summary judgment and under Rule 41(a)(1)(i) the action was terminated and the district court's interlocutory orders were vacated. *See In re Piper Aircraft Distrib. Sys. Antitrust Litigation*, 551 F.2d 213, 219 (8th Cir.1977) (The voluntary dismissal "carrie[d] down with it previous proceedings, and orders in the action, and all pleadings, both of plaintiff and defendant, and all issues, with respect to plaintiff's claim.") (quotation omitted). Although Titanic Ventures could possibly have initiated a new, independent civil action, the district court had no discretion to allow Titanic Ventures to intervene in the defunct action filed

*Thorp v. Scarne*, 599 F.2d 1169, 1175–76 (2d Cir.1979) (same); *Manze v. State Farm Ins.*, 817 F.2d 1062, 1066 n. 4 (3d Cir.1987) (same); *Pilot Freight Car., Inc. v. International Bhd. of Teamsters*, 506 F.2d 914, 916–17 (5th Cir.) (court rejects *Harvey* stating "If such a comprehensive modification of the Rule is desirable, the request must be addressed to the Supreme Court and to Congress, not to this Court."), *cert. denied*, 422 U.S. 1048, 95 S.Ct. 2665, 45 L.Ed.2d 700 (1975); *D.C. Elecs., Inc. v. Nartron Corp.*, 511 F.2d 294, 297 (6th Cir.1975) (questions *Harvey*'s validity); *Winterland Concessions Co. v. Smith*, 706 F.2d 793, 795 (7th Cir.1983) (rejects *Harvey*); *Matthews v. Gaither*, 902 F.2d 877 (11th Cir.1990) (implicitly rejects *Harvey*); Wright & Miller, § 2363 at 157–58 (most courts have refused to apply *Harvey* and have reached the result the language of the rule seems to require).

**4.** In *Harvey Aluminum*, the district court held several days of hearings on the plaintiff's motions for injunctive relief and considered the merits of the plaintiff's claim, stating that the plaintiff's chances of success were "remote, if not completely nil." *Harvey*, 203 F.2d at 107. Before the court issued its final ruling, the plaintiff filed a notice of dismissal. The court vacated the notice and denied the injunction on the merits. The Second Circuit affirmed, stating:

The purpose of this rule is to facilitate voluntary dismissals, but to limit them to an early stage of the proceedings before issue is joined. [These hearings were extensive and] the merits of the controversy were squarely raised and the district court in part based its denial of the injunction on its conclusion that the plaintiffs'

chance of success on the merits was small. Consequently, although the voluntary dismissal was attempted before any paper labeled "answer" or "motion for summary judgement" was filed, a literal application of Rule 41(a)1 to the present controversy would not be in accord with its essential purpose of preventing arbitrary dismissals after an advanced stage of a suit has been reached.

*Id.* at 107–08 (citations omitted).

**5.** In *Armstrong*, the defendant filed an answer and a motion for summary judgment, but the plaintiff's original complaint was dismissed. The plaintiff filed an amended complaint and before the defendant could answer, a notice of dismissal. This Court upheld the district court's refusal to dismiss the action, stating:

Rule 41(a)(1)(i) is designed to permit a disengagement of the parties at the behest of the plaintiff only in the early stages of a suit, before the defendant has expended time and effort in the preparation of his case. *See [Harvey Aluminum]*.

Frostie satisfied both the letter and the spirit of the rule by filing an answer and a motion for summary judgement [to the original complaint].

*Armstrong*, 453 F.2d at 916.

**6.** Even if the plaintiff has dismissed the action under Rule 41(a)(1)(i), the majority of courts hold that the district court may still impose sanctions under Fed.R.Civ.P. 11. *See Matthews*, 902 F.2d at 880 (collects cases).

by Marex. Therefore, the district court's judgment is reversed.

*REVERSED.*