790 A.2d 744

**Joel T. MILBURN**

v.

**Karen R. MILBURN.**

**No. 87, Sept. Term, 2001.**

Court of Special Appeals of Maryland.

Feb. 4, 2002.

Jennifer L. Hammond (Hammond & Campbell, LLP on the brief), Elkton, for appellant.

Brenda A. Sexton (Wilson & Sexton on the brief), Elkton, for appellee.

Submitted before DAVIS, HOLLANDER, and RAYMOND G. THIEME, JR. (retired, specially assigned), JJ.

DAVIS, Judge.

Appellant Joel T. Milburn appeals from an order[1] dated March 1, 2001, wherein the trial judge for the Circuit Court for Cecil County refused to accept the Stipulation of Dismissal signed by all parties pursuant to Maryland Rule 2–506, filed February 28, 2001. Appellant noted this timely appeal on March 30, 2001, presenting the following question for review:

Did the trial court err in refusing to accept the Joint Stipulation of Dismissal signed by appellant and appellee?

We answer the question in the affirmative and, therefore, reverse the judgment of the trial court.

## FACTUAL BACKGROUND

Appellant and appellee were married in a religious ceremony in Cecil County, Maryland on December 29, 1985. Two children, Cristina and Joel, Jr., were born of the union on August 12, 1986 and January 8, 1990, respectively. The marital home, located at 1583 Appellant Road, Elation, Maryland, was owned by appellant and appellee as tenants by the entireties.

On August 24, 2000, appellant filed a Complaint for Absolute Divorce, including a request for the "custody of the minor children of the parties, both *pendente lite* and permanently." Appellee filed an answer on September 20, 2000. A hearing to determine temporary custody of the minor children was held on December 13, 2000, and, in a temporary order entered on January 4, 2001, the trial court stated that the parties were to have joint legal custody of the children. Appellant was awarded physical custody; however, Cristina was to live with her paternal grandparents, Gail and Evans Milburn. Appellee

---

1. Appellee Karen R. Milburn concurs with the statement of the case, the question presented, the statement of facts, and the arguments advanced in appellant's brief.

was permitted visitation with the children every other weekend. The court ordered the parties to participate in custody evaluation with Family Court Services and attend a seminar, "Parenting for Parents Who Live Apart." During a second hearing, conducted on February 22, 2001, appellant was ordered to participate in a drug and alcohol evaluation program. The trial court also interviewed the children and appointed a guardian *ad litem.*

Subsequent to the February 22, 2001 hearing, the parties reconciled. In light of their reconciliation, the parties signed and filed a Joint Stipulation of Dismissal, pursuant to Rule 2–506. The trial court denied the parties' stipulation and, on March 2, 2001, entered an order, which stated in relevant part:

> [The] parties' stipulation of dismissal is *not* accepted by the [c]ourt at this time. An attorney has been appointed for the minor children and a custody evaluation ordered.

> There is also a drug and alcohol evaluation ordered for the father. The [c]ourt does *not* believe it to be in the children's best interests to dismiss the case at this time. The evaluations should proceed as ordered.

Appellant filed this timely appeal on March 30, 2001 and, on April 16, 2001, the trial court entered an order requiring the parties to deposit $1,500 into an escrow account with the guardian *ad litem,* John Downs, Esquire.

## LEGAL ANALYSIS

*Appealability*

■ Preliminarily, the general rule is that only final judgments are appealable. Md.Code (1998 Repl.Vol.), Cts. & Jud. Proc. (C.J.) § 12–301. Not surprisingly, neither party has addressed the issue of appealability because both are desirous of our immediate review of the lower court's ruling. Nevertheless, the consent of the litigants will not confer jurisdiction upon an appellate court. As the Court of Appeals observed in *Clark v. Elza,* 286 Md. 208, 211, 406 A.2d 922 (1979):

In this Court, both sides now agree that the decision of the circuit court was immediately appealable. Nevertheless, the consent of the litigants cannot vest jurisdiction in an appellate court. Recently in *Biro v. Schombert*, 285 Md. 290, 402 A.2d 71 (1979), we observed:

> The apparent acquiescence of the parties to the exercise of appellate jurisdiction ... does not enable us to overlook the matter. As we stated in *Eastgate Associates v. Apper*, 276 Md. 698, 700–701, 350 A.2d 661 (1976): "The jurisdiction of this Court, and the Court of Special Appeals, is determined by constitutional provisions, statutory provisions and rules; jurisdiction cannot be conferred by consent of the parties." Consequently, "this Court will dismiss an appeal *sua sponte* when it notices that appellate jurisdiction is lacking." *Smith v. Taylor*, 285 Md. 143, 400 A.2d 1130 (1979). *See* Rule 835 a 1. Similarly, where the Court of Special Appeals has entertained an appeal without having jurisdiction to do so, and the case is timely brought to our attention (such as by a petition for a writ of certiorari dealing with the merits of the appeal), we will issue a writ of certiorari and sua sponte consider the jurisdiction of the intermediate appellate court. *Eastgate Associates v. Apper, supra. See also Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 740, 96 S.Ct. 1202, 1204, 47 L.Ed.2d 435 (1976) ("[Alt]hough neither party has questioned the jurisdiction of the Court of Appeals to entertain the appeal, we are obligated to do so on our own motion if a question thereto exists.").

Consequently, we must make an independent determination as to the appealability of the trial court's decision.

■■■ The issue of appellate jurisdiction is one that may be raised *sua sponte*. *See Biro, supra*. As we explained in *Stephenson v. Goins*, 99 Md.App. 220, 636 A.2d 481 (1994), a final judgment must possess three attributes:

(1) it must be intended by the court as an unqualified, final disposition of the matter in controversy, (2) unless the court properly acts pursuant to Md. Rule 2–602(b), it must adjudi-

cate or complete the adjudication of all claims against all parties, and (3) the clerk must make a proper record of it in accordance with Md. Rule 2–601.

*Id.* at 223, 636 A.2d 481. Because the order of the trial court in the case *sub judice,* by its very nature, was not intended as an unqualified, final disposition of the matter in controversy, nor did it satisfy the other two prongs stated above, it did not constitute a final judgment.

■ There are, however, several exceptions to Rule 2–601. Certain non-final orders, i.e., collateral orders and judgments certified pursuant to Md. Rule 2–602, are appealable. *See Jenkins v. Jenkins,* 112 Md.App. 390, 399, 685 A.2d 817 (1996). The underlying purpose of these exceptions is to "allow appeals from orders other than final judgments when they have a final and irreparable effect on the rights of the parties." *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 545, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). *Cohen* is instructive as to the threshold issue we consider: whether this action should proceed to conclusion in the lower court before appellate review.

In *Cohen,* the Supreme Court was presented with the issue of whether a federal court was required to apply 1945 N.J. Laws 131, rendering appellee liable for the "reasonable expenses and attorney's fees" of appellant's defense, in the event appellee was unsuccessful in its shareholder suit. The issue necessitated the review of a decision that was not a final judgment, nor did it constitute an appealable interlocutory judgment. In proceeding to the merits of the appeal, the Court opined:

... The purpose [of the collateral order doctrine] is to combine in one review all stages of the proceeding that effectively may be reviewed and corrected if and when final judgment results. But this order of the [U.S.] District Court did not make any step toward final disposition of the merits of the case and will not be merged in final judgment. When that time comes, it will be too late effectively to review the present order, and the rights conferred by the

[N.J.] statute, if it is applicable, will have been lost, probably irreparably. We conclude that the matters embraced in the decision appealed from are not of such an interlocutory nature as to affect, or to be affected by, [the] decision of the merits of this case.

This decision appears to fall in that small class which finally determine[s] claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.

*Id.* at 546, 69 S.Ct. 1221.

In *Baltimore Police v. Cherkes,* 140 Md.App. 282, 298, 780 A.2d 410 (2001), we discussed when an appeal would be permitted under the collateral order doctrine:

The Court of Appeals has " 'long recognized, however, a narrow class of orders, referred to as collateral orders, which are offshoots of the principal litigation in which they are issued and which are immediately appealable as "final judgments" without regard to the posture of the case.' " *State v. Jett,* 316 Md. 248, 251, 558 A.2d 385 (1989) (quoting *Harris v. David S. Harris, P.A.,* 310 Md. 310, 315, 529 A.2d 356 (1987)). Collateral orders of this sort are treated as final under the "collateral order doctrine," which was first recognized by the United States Supreme Court in *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 545–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949). For an order to be appealable under that doctrine it must: (1) conclusively determine the disputed question, (2) resolve an important issue, (3) be completely separate from the merits of the action, and (4) be effectively unreviewable on appeal from a final judgment. *Nelson v. Kenny,* 121 Md.App. 482, 485, 710 A.2d 345 (1998) (citing Jett, 316 Md. at 251, 558 A.2d 385; *Bunting v. State,* 312 Md. 472, 477, 540 A.2d 805 (1988); *Harris v. Harris, supra,* 310 Md. at 316, 529 A.2d 356.)

. . .

Absolute immunity ... is a time-bound right that fits precisely the framework of the collateral order doctrine: it is an important issue separate and apart from the merits of the case that is effectively unreviewable on appeal from a final judgment because taking the case to a final judgment will destroy the right. . . .

■ "The four elements of the [collateral order doctrine] test are conjunctive in nature and in order for a prejudgment order to be appealable and to fall within this exception to the ordinary operation of the final judgment requirement, each of the four elements must be met." *In re Franklin P.*, 366 Md. 306, 327, 783 A.2d 673 (2001). Because we conclude that the order of the trial court satisfies the four elements established in *Cherkes*, we deem it to be collateral and, therefore, appealable.

Turning to the first element of the collateral order doctrine, the circumstances in the case *sub judice* are unique in that, typically, the "disputed question" is the controversy between the parties. Here, however, there is no dispute between the parties; rather, the dispute is simply whether the trial judge properly refused to accept the parties' stipulated dismissal. In *Jackson v. State*, 358 Md. 259, 747 A.2d 1199 (2000), the trial court denied a criminal defendant's motion to dismiss. The Court of Appeals concluded that the denial conclusively answered the question of the enforceability of the agreement between the parties, thereby satisfying the first prong of the prescribed test. We are persuaded by the Court's decision in *Jackson* that the trial court's refusal to accept the parties' stipulation constituted a definitive answer to the disputed question.

With regard to the second element, we have explained:
Importance has a particular meaning in this context. It does not only refer to general jurisprudential importance. Rather, the overarching principle governing "importance" is that, for the purposes of the *Cohen* test, an issue is important if the interests that would potentially go unprotected

without immediate appellate review of that issue are significant relative to the efficiency interests sought to be advanced by adherence to the final judgment rule.

*Ashcraft & Gerel v. Shaw,* 126 Md.App. 325, 345, 728 A.2d 798 (1999).

In *Callahan v. Bowers,* 131 Md.App. 163, 748 A.2d 499 (2000), we interpreted the collateral order doctrine as it pertained to the issue of immunity. In deciding that the order of the trial court clearly satisfied the second element, we concluded that in the event a litigant was entitled to immunity, the right may exist to forego trial. The circumstances presented here are similar. If, in reviewing the merits of the case *sub judice,* we were to reverse the trial court, the parties would be entitled to forego further proceedings. Because a decision holding the stipulation to be effective would result in the termination of the litigation, the order concerned an important issue. *See, e.g., Clark,* 286 Md. at 213, 406 A.2d 922 (holding that the trial court's denial of appellant's motion to enforce settlement agreement constituted an important issue).

The third element requires that the order "be completely separate from the merits of the action." *Cherkes,* 140 Md. App. at 298, 780 A.2d 410. In *Clark,* the Court of Appeals declared that "questions bearing upon the enforceability of [a] settlement agreement have absolutely nothing to do with the merits of [a] tort cause of action. Thus, it is 'completely separate' from the principal claim." *Clark,* 286 Md. at 213, 406 A.2d 922. Adopting the rationale of *Clark,* we conclude that the trial court's denial of the parties' stipulated dismissal constituted a separate issue from the merits of the divorce action.

In *Ashcraft,* we were asked to determine whether an order forcing appellant to turn over documents, claimed to be privileged, constituted a collateral order, under the *Cherkes* test. There, we noted that "[t]he fourth requirement, that the order be effectively non-reviewable on appeal from a final judgment, is also satisfied because a reversal of the Order on appeal *cannot undo what will have already taken place." Id.* at 345,

728 A.2d 798 (emphasis added). Likewise, in the case *sub judice*, were we to permit the proceedings to go forward at the trial level, the parties would be required to pay $1,500 into the Family Law Account. Although it is unclear what interests of the minor children the guardian would have protected, he will certainly dissipate the funds in the Family Law Account, should we decide that the issue must await the conclusion of the litigation before the parties are allowed to appeal. The parties, under such circumstances, could not be restored to their respective positions prior to the lower court's rejection of the joint stipulation and order to deposit funds into the account for the guardian. Their victory would indeed be Pyrrhic.

In sum, in holding that a final judgment on the merits of the underlying tort claim would render the ruling on the settlement agreement effectively unreviewable, the Court, in *Clark*, opined:

> One of the principal considerations in entering a pre-trial settlement agreement is the avoidance of the expense and inconvenience of a trial. If the defendants must proceed to a trial on the merits, this contractual benefit will be irretrievably lost. Regardless of the outcome of the trial or the outcome of an appeal after trial, the defendants will have been forced to go to trial and thus will have been deprived of a right under the contract if the contract should have been enforced. *Cf. Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977); *Neal v. State*, 272 Md. 323, 322 A.2d 887 (1974), holding that a denial of a pre-trial motion to dismiss an indictment on double jeopardy grounds was final and therefore immediately appealable. *See also Jolley v. State, supra*, 282 Md. at 357, 384 A.2d 91.

*Clark*, 286 Md. at 213, 406 A.2d 922.

The consideration in *Clark* of the avoidance of the expense and inconvenience attendant to requiring the parties to proceed prior to determination of the legal efficacy of the pre-trial settlement agreement is virtually identical to the avoidance of being ordered to go forward with the proceedings in which

there is a challenge to the instant joint stipulation, intended to forestall litigation and resolve the issues between the parties without the necessity of further proceedings.

Two decisions in criminal cases are illustrative of the basis for granting immediate appeals. In *Neal v. State*, 272 Md. 323, 322 A.2d 887 (1974), the Court of Appeals considered this Court's dismissal of an appeal (20 Md.App. 20, 314 A.2d 710 (1972)), taken by respondent after the trial court had, *sua sponte*, granted a mistrial, but before retrial in the circuit court. The Court of Appeals rejected this Court's rationale, bottomed on the contention that whether respondent would be twice placed in jeopardy involved the proper exercise of discretion and was not therefore immediately appealable. Holding that the determination that double jeopardy does or does not exist is not an exercise of discretion, the Court concluded that "the defense of double jeopardy is a liminal constitutional issue, raised at the outset, before there is a trial." *Id.* at 326, 322 A.2d 887. Inherent in the Court's decision is that the very purpose of interposing the bar of double jeopardy is to obviate the need, should respondent prevail, to be subjected to further proceedings.

Four years later, the Court of Appeals again considered whether an appeal would lie from a seemingly interlocutory order that denies a constitutional right. *Stewart v. State*, 282 Md. 557, 386 A.2d 1206 (1978). Differentiating between an appeal from a denial of a motion to dismiss based on an alleged denial of a speedy trial and a denial of a motion based on double jeopardy, the Court, in essence, reasoned that virtually every defendant subsequent to arrest or indictment would be subject to substantial restrictions on his or her liberty and therefore able to raise the denial of a speedy trial as the basis for an immediate appeal. Double jeopardy, according to the Court, "requires at least a colorable showing that the defendant once before has been in jeopardy...." *Id.* at 566, 386 A.2d 1206.

The *Stewart* Court reiterated the well-settled rule regarding immediate appeals in its pronouncement that "Maryland also

disfavors interlocutory or 'piecemeal' appeals...." Germane to our discussion herein is the language of the Court of Appeals in *Stewart,* citing *United States v. MacDonald,* 531 F.2d 196 (4th Cir.1976):

> There are simply no further steps that can be taken in the District Court to avoid the trial the defendant maintains is barred by the Fifth Amendment's guarantee.... Finally, and perhaps most importantly, "the rights conferred on a criminal accused by the Double Jeopardy Clause would be significantly undermined if appellate review of double jeopardy claims were postponed until after conviction and sentence."

*Stewart,* 282 Md. at 562, 386 A.2d 1206 (citations omitted).

Appellant and appellee, by their Joint Stipulation of Dismissal, sought to end the proceedings in the lower court and to avoid incurring the expense of compensating the attorney appointed by the court to represent the minor children. In the event we agree that the proceedings should have terminated upon the entry of the joint stipulation for dismissal, our disposition herein would effectively end all proceedings in the circuit court. Were we to hold that the instant appeal was taken prematurely, appellant and appellee would be required to participate in further proceedings and compensate the court-appointed attorney, both of which they seek to avoid by this appeal. Nor would the cardinal principle underlying the requirement that appeals be from final judgments—the avoidance of piecemeal appeals—be served. A ruling favorable to the parties of record would not result in any further appellate review by this Court.

The central issue on appeal in the case *sub judice* is whether the proceedings should continue at the trial court level. The posture of the lower court proceedings, when appealed, was unique. A final judgment is usually contemplated and anticipated by all parties. Here, however, it is unclear what fruits further proceedings would bear. The stipulated dismissal entered into by both parties is the consequence of what is essentially a settlement. The parties are no longer

pursuing a divorce and, therefore, are no longer seeking a divorce decree. Consequently, unless other parties and justiciable issues are properly before the court, appellant and appellee will be constrained to participate in a nugatory proceeding until its conclusion, notwithstanding the Joint Stipulation of Dismissal. The lower court's order was collateral to the merits of the divorce case. We shall therefore entertain the appeal therefrom.

### *Joint Stipulation of Dismissal*

The parties contend that the trial court committed reversible error in refusing to accept a properly filed Stipulation of Dismissal. They argue that, because Rule 2–506 is a clear and unambiguous rule of procedure, the trial court "lack[ed] the authority to refuse to accept a notice of dismissal or stipulation of dismissal, which [was] signed by both parties." The parties also contend that, because the stipulation was proper, the trial court acted without jurisdiction in requiring them to deposit $1,500 with the guardian *ad litem.* We begin our discussion with an analysis of Rule 2–506.

Rule 2–506 states, in relevant part:

(a) *By notice of dismissal or stipulation.* Except as otherwise provided in these rules or by statute, a plaintiff may dismiss an action without leave of court (1) by filing a notice of dismissal at any time before the adverse party files an answer or a motion for summary judgment or (2) *by filing a stipulation of dismissal signed by all parties who have appeared in the action.*

(b) *By order of court.* Except as provided in section (a) of this [r]ule, a plaintiff may dismiss an action only by order of court and upon such terms and conditions as the court deems proper. If a counterclaim has been pleaded prior to the filing of plaintiff's motion for voluntary dismissal, the action shall not be dismissed over the objection of the party who pleaded the counterclaim unless the counterclaim can remain pending for independent adjudication by the court.

. . .

(Emphasis added.)

When interpreting rules of procedure, we are constrained to use the well-established axioms of statutory construction. *State of New Jersey ex rel. Lennon v. Strazzella,* 331 Md. 270, 274, 627 A.2d 1055 (1993) (citations omitted). When the language of the rule is clear and unambiguous, we must only look to the basic meaning of the words used. Indeed, we are "to give effect to the entire rule, neither adding, nor deleting, words in order to give it a meaning not otherwise evident by the words actually used." *Id.* When the language is ambiguous, however, we must consider other factors such as legislative intent. *Id.*

Appellant urges us to look to case law interpreting the Federal Rules of Civil Procedure (Fed.R.Civ.P.) in our analysis of Rule 2–506 because, as noted in *Lennon, supra,* this rule emanated from Fed.R.Civ.P. 41. *Lennon,* 331 Md. at 279, 627 A.2d 1055. We agree that the interpretations of Fed.R.Civ.P. 41 provide us with insight into the purpose of the Maryland rule concerning voluntary dismissal. Federal R. Civ. P. 41(a) is clear; construing Fed.R.Civ.P. 41(a), the Court of Appeals for the Fourth Circuit has stated that, "[a]s the [r]ule's text makes plain, the universe of plaintiff-initiated, voluntary dismissals is broken into two categories." *Marex Titanic, Inc. v. Wrecked & Abandoned Vessel,* 2 F.3d 544, 546 (4th Cir.1993). One category involves the situations in which the plaintiff may dismiss of his or her own volition, without any limitations by the trial court. *Piedmont Interstate Fair Ass'n v. Bean,* 209 F.2d 942, 945 (4th Cir.1954). The purpose behind this provision is to allow a person to withdraw his or her claim when no one will be prejudiced by such action. *Id.* Once the case has been prepared for trial, however, and one of the parties will be prejudiced by a dismissal, Rule 41(b) requires leave of court. *Id.* There is a third scenario: when the parties act in concert. As stated in Fed.R.Civ.P. 41(a)(2), in this situation, no leave of court is required. We apply this reasoning to our analysis of Rule 2–506 below.

Like Fed.R.Civ.P. 41, Rule 2–506 is clear and unambiguous; voluntary dismissal may be obtained in three situations. A party may file a notice prior to the filing of an answer or motion for summary judgment by the adverse party or a stipulation signed by all parties; *or* he or she may obtain leave of court. The rule clearly mandates that there will be situations when a trial court will be required to exercise its discretion in granting a voluntary dismissal; however, there will also be situations when *the parties,* as opposed to the trial court, may, without leave of court, dismiss the cause of action. It is the parties' contention that their case falls into the latter category. Specifically, they contend that, because both appellant and appellee signed the stipulation, the trial court lacked the authority to reject it. We agree.

It is undisputed that both appellant and appellee signed the stipulation. At issue, however, is whether they were the sole parties to the cause of action. In denying the proposed stipulated dismissal, the trial court was clearly concerned about the best interests of the minor children. The trial court effectively included them as parties to the action, such that any voluntary dismissal would require their consent, via their guardian *ad litem.* In reviewing the judgment of the trial court, we must determine, therefore, the meaning of the phrase "signed by all parties who have appeared in the action."

The term "party" is not defined in the Maryland Rules; however, those persons who are entered on the record as plaintiff or defendant are generally considered the parties. *Douglas v. First Sec. Fed. Sav. Bank,* 101 Md.App. 170, 643 A.2d 920 (1994). Any other persons who may be affected by the outcome of the cause of action, either indirectly or consequently, although interested persons, *will not be considered parties.* Black's Law Dictionary, Revised 5th Ed. (1983), *cited in Virginia Int'l Terminals v. Ceres Marine Terminals,* 879 F.Supp. 31, 32–33 (E.D.Va.1995)(stating that the term "party" is a technical word having a precise meaning in legal parlance); *Golatte v. Mathews,* 394 F.Supp. 1203, 1207 (M.D.Ala. 1975) (stating that the term "party" refers to those by or

against whom a legal suit is brought; all others who may be affected by the suit, indirectly or consequently, are persons interested but not parties); *M & A Elec. Power Coop. v. True*, 480 S.W.2d 310, 314 (Mo.Ct.App.1972)(declaring that a person whose name is designated on the record as plaintiff or defendant is a party).

Although Maryland appellate courts have yet to declare a husband and wife the only persons recognized as parties to a divorce action, many other jurisdictions have established this as the rule. Most notable is the landmark decision of *Baugh v. Baugh,* 37 Mich. 59 (1877), often cited in cases involving issues similar to the case *sub judice*. In that decision, the Supreme Court of Michigan held:

> It is true that the interests of children are in some important respects more nearly affected by [divorce] proceedings than by those which merely concern rights of property....
> But no court in this country has any power to compel discordant husbands and wives to live together.... [Therefore,] [t]he *husband and wife are the only persons recognized as parties.*

*Id.* at 61–62 (emphasis added). *See also Kasper v. Metropolitan Life Ins. Co.,* 412 Mich. 232, 313 N.W.2d 904 (1981); *Kelly v. Kelly,* 329 Mo. 992, 47 S.W.2d 762 (1932); *State ex rel. Fowler v. Moore,* 46 Nev. 65, 207 P. 75 (1922); *Miller v. Miller,* 76 N.D. 558, 38 N.W.2d 35 (1949). We find the reasoning in *Baugh* persuasive, agree with its conclusion and, therefore, adopt it. Because we conclude the minor children were not parties, we consider the stipulation, signed by both appellant and appellee, sufficient to satisfy the requirements set forth in Rule 2–506(a). Accordingly, the trial court improperly refused to accept the voluntary dismissal.

 Appellant concludes that, "[o]nce the parties in this case signed the stipulation of dismissal, the case was settled and there ceased to be adverse parties asserting adverse positions or seeking a legal decision and, therefore, ... the court had no jurisdiction ... to later order the parties to deposit $1,500 in an escrow account." We agree. "[A] notice of voluntary dismissal, once filed with the clerk, deprives the

court of jurisdiction to enter most orders unless the dismissal is vacated." *Ideal Fed. Sav. Bank v. Murphy,* 339 Md. 446, 454, 663 A.2d 1272 (1995). Upon the parties' filing of a stipulated dismissal, all justiciable issues ceased to exist[2] and the court lacked jurisdiction over the cause of action. Accordingly, the trial court's order that the parties were to deposit $1,500 into an escrow account with Downs is vacated.

**ORDER OF THE CIRCUIT COURT FOR CECIL COUNTY VACATED; CASE REMANDED FOR ENTRY OF ORDER OF DISMISSAL PURSUANT TO MARYLAND RULE 2–506.**

**COSTS TO BE WAIVED.**

---

2. To the extent that the court's concern about the best interests of the children involved matters of custody, child support and other matters related to the well being of the children affected by the contemplated separation of the parties, all such matters are rendered moot by the decision of the parties to reconcile. All other matters related to the best interests of the children, for example, perceived neglect or abuse by either or both of the parents, may be referred to child protective services and addressed pursuant to Md.Code (1999 Repl.Vol.), Fam. Law § 5–705 and addressed in a separate legal proceeding. In the absence of any suggestion of neglect, abuse, or other improprieties by the parties to the detriment of the minor children, there is no reason to appoint a guardian *ad litem* to protect the interests of the minor children in any event.