**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

In Re: ROBERT V. MATTHEWS,
                              *Petitioner.*

No. 04-1113

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

and

STATE OF NORTH CAROLINA,
                    *Claimant-Appellee,*

v.

ROBERT V. MATTHEWS
                    *Claimant-Appellant,*

and

NORTH CAROLINA'S ORIGINAL
COPY OF THE BILL OF RIGHTS,
                    *Defendant,*

WAYNE PRATT, INCORPORATED,
                    *Claimant.*

No. 04-1249

Appeals from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, Chief District Judge.
(CA-03-204-5-BO)

Argued: October 26, 2004

Decided: January 26, 2005

Before WILKINS, Chief Judge, WILLIAMS, Circuit Judge,
and Glen E. CONRAD, United States District Judge
for the Western District of Virginia,
sitting by designation.

Vacated and remanded with instructions by published opinion. Chief Judge Wilkins wrote the opinion, in which Judge Williams and Judge Conrad joined.

## COUNSEL

**ARGUED:** Michael Atwater Stratton, STRATTON FAXON, New Haven, Connecticut, for Robert V. Matthews. Frank DeArmon Whitney, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for the United States. William Dale Talbert, Assistant Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for the State of North Carolina. **ON BRIEF:** Joel T. Faxon, STRATTON FAXON, New Haven, Connecticut, for Robert V. Matthews. Roy Cooper, North Carolina Attorney General, Grayson G. Kelley, Chief Deputy Attorney General, Karen A. Blum, Assistant Attorney General, Raleigh, North Carolina; Paul M. Newby, Assistant United States Attorney, Raleigh, North Carolina, for Appellees.

## OPINION

WILKINS, Chief Judge:

Robert V. Matthews appeals a district court decision that the State of North Carolina ("the State") is the legal owner of a historic document seized by federal agents in connection with an *in rem* forfeiture action that the United States voluntarily dismissed. Because the district court lacked authority to adjudicate ownership of the document after dismissal of the forfeiture action, we vacate and remand with instructions.

### I.

In September 1789, Congress approved twelve proposed amendments to the United States Constitution, including the ten amendments that became known as the Bill of Rights. Soon thereafter, President Washington sent handwritten copies of these proposed

amendments to thirteen states, including North Carolina. The State maintained possession of its copy of the amendments ("the North Carolina copy") until the Civil War; during that war, or soon thereafter, the North Carolina copy left the State's possession.[1]

In February 2000, Wayne Pratt, Inc., a corporation owned by antiques dealer Wayne Pratt,[2] purchased a document believed to be one of the original copies of the Bill of Rights ("the document"). Matthews claims that he contributed half of the $200,000 purchase price as a "passive investor" in a venture by Pratt to buy and resell the document for profit. J.A. 700.

After Pratt contacted several individuals in an effort to resell the document, North Carolina officials learned that the document was being offered for sale. Believing that the document was the North Carolina copy, State officials asked the United States Attorney's office for assistance in recovering the document. In March 2003, federal agents applied for and received a warrant to seize the document on the ground that there was probable cause to believe it had been stolen, transported, and possessed in violation of federal law and thus was subject to forfeiture. Later that month, FBI agents, working with individuals from the National Constitution Center in Philadelphia, conducted a staged purchase of the document from Pratt in Pennsylvania. During this operation, agents seized the document from John L. Richardson, Pratt's attorney whom he had authorized to conduct the transaction.

The United States subsequently brought a civil forfeiture action against the document in the Eastern District of North Carolina. *See* 28

---

[1]The State and the United States (collectively, "Appellees") claim that the North Carolina copy was stolen from the State Capitol by a Union soldier and later sold to an individual in Ohio. While Matthews apparently agrees that the North Carolina copy left the State's possession around the time of the Civil War, he contends that many of the specific facts concerning the history of the document—including how it left the State's possession—have not yet been adjudicated. Because our disposition of this appeal does not depend on the resolution of these facts, we do not address them further.

[2]We refer to Pratt and Wayne Pratt, Inc. collectively as "Pratt."

U.S.C.A. § 1355(b)(1)(A) (West 1993) (providing that a forfeiture action may be brought in "the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred"). The district court issued a warrant of arrest for the document, which was delivered into the custody of the United States Marshal. Pratt, Matthews, and the State filed verified statements of interest claiming they were entitled to ownership and possession of the document; the United States formally agreed that the State was the legal owner of the document. On September 10, 2003, Pratt withdrew his claim and conveyed all his rights in the document to the State. That same day, the United States voluntarily dismissed the forfeiture action. One day later, Matthews moved the district court to return the document to him, asserting that he was its co-owner and thus was entitled to possess it upon dismissal of the forfeiture action.

On November 24, 2003, the district court entered an order stating that due to the United States' dismissal of the forfeiture action, the court would have to return the document to Richardson—the person from whom it was seized—"[i]n order to restore the parties . . . to the *status quo ante*." J.A. 1193. Noting, however, that Matthews might assert claims regarding the document upon its return to Richardson, the district court ordered Matthews to "declare and show cause . . . what claim he makes against [Pratt] upon the dismissal of this action and the return of the property." *Id.* at 1194. Matthews responded that upon releasing the document to Richardson, the district court would lose jurisdiction over Matthews' claim, and he would then "take appropriate action in a competent court in order to adjudicate the issue of ownership." *Id.* at 1336.

Before the district court entered a final order disposing of the document, Matthews commenced actions in other courts seeking, *inter alia*, to enjoin Richardson from transferring the document upon its return to him. The State also brought an action in North Carolina state court seeking injunctive and declaratory relief. In response to these filings, the district court entered an order on December 16, 2003, stating that it retained "exclusive *in rem* jurisdiction" over the document and that its earlier order was intended "to provide a forum within which to conclude all of the claims and disputes having to do with the document in question prior to a final order in this case." *Id.* at 1362-63. Following a hearing on January 23, 2004, the court ruled that the

State was the legal owner of the document because it was a North Carolina public record over which the State had never voluntarily relinquished control. The district court ordered that the document be delivered to the State but stayed its judgment pending appeal.

## II.

Matthews' primary claim on appeal is that because the United States voluntarily dismissed its forfeiture action, the district court lacked authority to adjudicate ownership rights in the document. Matthews contends that the district court should have restored the parties to the *status quo ante* that existed before the United States seized the document. *See Black's Law Dictionary* 1448 (8th ed. 2004) (defining "*status quo ante*" as "[t]he situation that existed before something else (being discussed) occurred"). We review this issue concerning the jurisdiction of the district court de novo. *See United States v. Jones*, 225 F.3d 468, 469 (4th Cir. 2000).

In its opinion setting forth its reasons for awarding ownership of the document to the State, the district court determined that it possessed authority to resolve the competing ownership claims despite the dismissal of the underlying action:

> Throughout these legal proceedings, this Court has retained *in rem* jurisdiction over the disposition of [the document], because the document is and has been in the possession of the United States Marshal for the Eastern District of North Carolina since the March 2003 seizure. Therefore, despite the Government's voluntary dismissal of its action against [the document], this Court still was required to determine the final disposition of the [document].

J.A. 1426. For the reasons that follow, we conclude that this determination was erroneous.

The United States dismissed its forfeiture action without prejudice by filing a notice of voluntary dismissal before Matthews, the only remaining adverse party, answered the forfeiture complaint. *See* Fed. R. Civ. P. 41(a)(1)(i). A voluntary dismissal under Rule 41(a)(1)(i) "is

available as a matter of unconditional right and is self-executing, i.e., it is effective at the moment the notice is filed with the clerk and no judicial approval is required." *Marex Titanic, Inc. v. The Wrecked & Abandoned Vessel*, 2 F.3d 544, 546 (4th Cir. 1993) (citations omitted). Moreover, a dismissal without prejudice "operates to leave the parties as if no action had been brought at all." *Dove v. CODESCO*, 569 F.2d 807, 809 n.3 (4th Cir. 1978). A voluntary dismissal thus "carries down with it previous proceedings and orders in the action, and all pleadings, both of plaintiff and defendant, and all issues, with respect to plaintiff's claim." *Van-S-Aviation Corp. v. Piper Aircraft Corp. (In re Piper Aircraft Distrib. Sys. Antitrust Litig.)*, 551 F.2d 213, 219 (8th Cir. 1977) (internal quotation marks omitted) (hereinafter *Piper Aircraft*). In addition, after an action is voluntarily dismissed, the court lacks authority to conduct further proceedings on the merits. *See Duke Energy Trading & Mktg., L.L.C. v. Davis*, 267 F.3d 1042, 1049 (9th Cir. 2001); *Foss v. Fed. Intermediate Credit Bank of St. Paul*, 808 F.2d 657, 660 (8th Cir. 1986).

Here, the forfeiture action was terminated when the United States filed its notice of dismissal. *See Marex Titanic*, 2 F.3d at 546-47. At that time, the various statements of ownership interest became a nullity. *See id.* at 547; *Piper Aircraft*, 551 F.2d at 219. The question that remains is what authority the district court had concerning the disposition of the property, which remained in the possession of the United States Marshal, once the forfeiture action ended. This question is not answered by the federal forfeiture statutes. Also, the parties have not cited, nor have we found, any reported decision specifically addressing whether, after the voluntary dismissal of a civil forfeiture action under Rule 41(a)(1)(i), the district court may adjudicate competing ownership claims to the seized property. *But cf. United States v. $515,060.42 in United States Currency*, 152 F.3d 491, 501 n.9 (6th Cir. 1998) (in forfeiture action dismissed on limitations grounds and involving separate claims to seized currency, stating in dictum that "the district court retains the authority to make an appropriate disposition of the property"); *United States v. 414 Kings Highway*, 128 F.3d 125, 127 (2d Cir. 1997) (holding, in voluntarily dismissed forfeiture action, that "the [district] Court retained authority to make an appropriate disposition of the proceeds" of an interlocutory sale of real property).

To the extent that *$515,060.42* and *414 Kings Highway* support the proposition that a district court may adjudicate competing ownership claims to seized property after the voluntary dismissal of a forfeiture action, we decline to adopt their reasoning. Both decisions relied on the principle that a district court retains jurisdiction to resolve collateral issues after an action is dismissed. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990). But this authority applies only to issues that do not involve "a judgment on the merits of an action," *id.* at 396, such as awards of costs, attorney's fees, or sanctions, *see id.* at 395-96. By contrast, the determination of ownership interests in property seized in connection with a forfeiture action goes to the heart of the merits of that action. Indeed, the purpose of an *in rem* forfeiture action is to conclusively determine ownership rights in the seized property. *See Restatement (Second) of Judgments* § 6 cmt. b (1982) (explaining that the purpose of "true" *in rem* actions such as government forfeiture proceedings is "to reach a conclusive determination of all claims to the thing so that it may be transferred to . . . a person who will then hold it free and clear of all claims" (internal quotation marks omitted)).

We find our decision in *Marex Titanic* instructive here. In that case, Marex Titanic, Inc. (Marex) brought an *in rem* action seeking a declaration that it was the exclusive owner of objects recovered from the wreckage of the RMS Titanic or, in the alternative, an award of salvage rights. *See Marex Titanic*, 2 F.3d at 545. Based on Marex's representations that all competing salvage claims had been abandoned, the district court issued a warrant of arrest for the property. *See id.* Thereafter, Titanic Ventures, a corporation that had conducted extensive salvage operations at the Titanic wreckage site, sought to vacate the warrant of arrest and moved to enjoin Marex from salvaging the wreckage. *See id.* After three days of injunction hearings—but before Titanic Ventures answered Marex's complaint—Marex filed a notice of dismissal pursuant to Rule 41(a)(1)(i). The district court, however, "vacate[d]" Marex's notice of dismissal on grounds that substantial proceedings had been conducted on the merits and that Marex was attempting to dismiss the case because the proceedings had been unfavorable to it. *Id.* (internal quotation marks omitted). Titanic Ventures then sought to intervene in Marex's action and filed an "intervening complaint," asking the court to declare Titanic Ventures the exclusive salvor of the Titanic wreckage. *Id.* (internal quota-

tion marks omitted). The district court allowed Titanic Ventures to intervene and entered a judgment in its favor. *See id.*

Marex appealed the award of exclusive salvage rights to Titanic Ventures, and we reversed. Emphasizing that Rule 41(a)(1)(i) grants a plaintiff the absolute right to voluntarily dismiss its complaint before the adverse party answers, we held that a district court must give effect to a voluntary dismissal even when substantial proceedings have been conducted on the merits. *See id.* at 546-48. We therefore determined that when Marex filed its notice of dismissal, "the action was terminated and the district court's interlocutory orders were vacated." *Id.* at 547. Further, we concluded that the district court lacked authority to adjudicate the merits of Titanic Ventures' claim after Marex's voluntary dismissal: "Although Titanic Ventures could possibly have initiated a new, independent civil action, the district court had no discretion to allow Titanic Ventures to intervene in the defunct action filed by Marex." *Id.* at 547-48.

The principles of *Marex Titanic* counsel a similar result here. Once the United States voluntarily dismissed its forfeiture action, all proceedings in the action were terminated, and the district court lacked the authority to issue further orders addressing the merits of the case. In particular, although the State and Matthews continued to assert ownership interests in the document, the district court no longer had authority to adjudicate those interests—as it would have done had the forfeiture action gone forward, *see Republic Nat'l Bank of Miami v. United States*, 506 U.S. 80, 92 (1992) (opinion of Blackmun, J.) (noting that the purpose of an *in rem* forfeiture proceeding "is to determine the ownership of the res"); *Restatement (Second) of Judgments* § 6 cmt. b (1982) (explaining that an *in rem* forfeiture action is intended to conclusively resolve ownership claims to the property).

Appellees advance two main arguments in support of their claim that the district court retained authority to determine ownership rights in the document after the voluntary dismissal of the forfeiture action. We find both arguments unavailing. First, Appellees contend that the district court retained *in rem* jurisdiction over the document because it remained in the possession of the court. But the mere possession of the document by the district court did not confer upon it the authority to adjudicate ownership rights when the only substantive claim

regarding the document—the United States' forfeiture action—had been dismissed. *See Elliott v. The M/V Lois B*, 980 F.2d 1001, 1004 (5th Cir. 1993) (explaining that in an *in rem* action, "once jurisdiction is established by seizure of the res, the court ordinarily maintains jurisdiction *until the litigation ends*" (emphasis added)); *cf. Porsche Cars N. Am., Inc. v. Porsche.Net*, 302 F.3d 248, 255 (4th Cir. 2002) (distinguishing *in rem* jurisdiction over property from subject matter jurisdiction over substantive claims concerning that property). Second, Appellees argue that the district court retained supplemental jurisdiction over the ownership claims of parties other than the United States. *See* 28 U.S.C.A. § 1367(a) (West 1993) (providing that when a district court has original jurisdiction over particular claims, the court may exercise supplemental jurisdiction "over all other claims" that are closely related to the original claims). But again, the only independent claim asserted here was the United States' forfeiture complaint against the document. Although other interested parties submitted statements of interest during the course of the forfeiture action, they did not assert freestanding claims that could be adjudicated independently of that action. Indeed, the statements of interest became a nullity once the forfeiture action was dismissed.

Having determined that the district court lacked authority to determine ownership rights in the document after the voluntary dismissal, we must consider what course the district court should have taken to dispose of the document. Matthews asserts that the district court should have restored the parties to the *status quo ante* that existed prior to the seizure of the document. Because the dismissal of the forfeiture action "operates to leave the parties as if no action had been brought at all," *Dove*, 569 F.2d at 809 n.3, and nullifies all proceedings relating to the merits of the case, *see Marex Titanic*, 2 F.3d at 547, we agree that a return to the *status quo ante* is appropriate. However, it is not clear to us that the "*status quo ante*" is necessarily a point in time prior to the seizure of the document.

Following the United States' voluntary dismissal, the parties asserted and the district court assumed that restoring the *status quo ante* would involve returning the parties to the situation that existed before the United States seized the document. The parties continued to maintain this position in their appellate briefs. At oral argument, however, the United States suggested an alternative position: that the

district court should restore the *status quo ante* that existed after the United States seized the document but before it commenced the forfeiture action. In particular, the United States asserted that the voluntary dismissal did not affect the validity of the seizure warrant—which was executed before the filing of the forfeiture complaint—and that the document remained subject to forfeiture. The United States further suggested that it was entitled to retain the document and take additional steps to ensure that the document is ultimately returned to the State. *See* J.A. 1100 (statement in United States' notice of voluntary dismissal that the dismissal was "without prejudice"). We decline to decide in the first instance whether a return to the post-seizure, pre-complaint *status quo ante* would be proper because the parties have not briefed the issue—either in the district court or before this court. Instead, we believe it is appropriate for the district court to consider this issue in the first instance on remand, with the benefit of briefing from the parties.

If the district court determines that it must return the parties to the *status quo ante* that existed post-seizure but pre-complaint, the court should then turn to Matthews' motion for return of property. In ruling on that motion, the court should consider whether it is best construed as a motion pursuant to Federal Rule of Criminal Procedure 41(g), which provides that "[a] person aggrieved . . . by the deprivation of property may move for the property's return." *See* 18 U.S.C.A. § 981(b)(3) (West Supp. 2004) (providing that "[a]ny motion for the return of property seized under this section shall be filed in the district court in which the seizure warrant was issued").

If, on the other hand, the district court concludes that it must return the parties to the *status quo ante* that existed before the document was seized, the court must then determine to whom the document should be returned. In its initial order after the voluntary dismissal, the district court indicated that the proper method to restore the pre-seizure *status quo ante* would be to return the document to Richardson, Pratt's attorney who possessed it when it was seized. Again, we are reluctant to decide this issue in the first instance. In particular, we note that while the forfeiture action was pending, Pratt released all his interests in the document to the State—apparently including any right to possess the document. Appellees have asserted that because of this transfer, the pre-seizure *status quo ante* could be achieved by return-

ing the document to the State. Given the potential factual questions surrounding this and other issues, we believe that the district court is in the best position to determine how to restore the pre-seizure *status quo ante* if it determines that returning the parties to the post-seizure, pre-complaint *status quo ante* is inappropriate.[3] Whatever method the district court chooses should fully preserve the parties' ability to pursue their ownership claims in other proceedings. *Cf. Marex Titanic*, 2 F.3d at 547-48.

### III.

We conclude by addressing one final issue. In his verified statement of interest, Matthews "denie[d] that [the document] is now or ever has been the property of the State of North Carolina." J.A. 60. Appellees contend, however, that during a subsequent district court hearing, Matthews' counsel conceded that the document is in fact the North Carolina copy. *See id.* at 453 (stating that "[t]his was . . . North Carolina's Bill of Rights" and that "[i]t's been authenticated by numerous people"). In its opinion awarding ownership of the document to the State, the district court relied on counsel's statements in concluding that "all parties have . . . conceded that the Document is indeed the State's Original Copy." *Id.* at 1423. At oral argument before this court, Matthews' counsel asserted that he made these statements prematurely and that they should not be deemed admissions. Counsel stated that Matthews concedes only that the document is *one* of the original copies of the Bill of Rights—not necessarily the North Carolina copy—and that the exact identity of the document remains to be adjudicated.

Whether Matthews has conceded that the document is the North Carolina copy does not affect our disposition of this appeal. Matthews' position, as we understand it, is that even if the document is the North Carolina copy, he is entitled to litigate whether the State

---

[3]We express no opinion as to whether the district court might properly determine that the State is entitled to possess the document, though we believe that the district court may properly consider the Pratt assignment in determining the pre-seizure *status quo ante*. We believe the district court should also consider the arguments of both Matthews and the State in resolving the right of possession issue.

voluntarily relinquished ownership of it. We emphasize that we express no opinion on the merits of this or any other claim that Matthews may assert. But because the forfeiture action here was terminated by voluntary dismissal before any proper adjudication of ownership, we agree that Matthews has had no opportunity even to be heard on his claims, whatever their merit.

IV.

For the reasons set forth above, we vacate the district court order granting ownership and possession of the document to the State and remand with instructions for the district court to restore the parties, as closely as possible, to the *status quo ante* as it determines that phrase to mean.[4]

*VACATED AND REMANDED WITH INSTRUCTIONS*

---

[4]Because we grant relief on Matthews' appeal, we deny his mandamus petition as moot.